STATE OF NEBRASKA, APPELLEE, V.
CLYDE W. BRONSON, SR., APPELLANT.

672 N.W.2d 244

Filed December 12, 2003.    Nos. S-03-040, S-03-483.

James R. Mowbray and Jerry L. Soucie, of Nebraska Commission on Public Advocacy, for appellant.

Jon Bruning, Attorney General, and Kevin J. Slimp for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

Clyde W. Bronson, Sr., was convicted in 1992 of first degree murder and use of a weapon to commit a felony. The convictions and sentences were affirmed on direct appeal to this court. *State v. Bronson*, 242 Neb. 931, 496 N.W.2d 882 (1993). On May 8, 2002, the district court for Douglas County granted Bronson's motion to subject evidence in his case to DNA testing pursuant to Nebraska's DNA Testing Act, Neb. Rev. Stat. §§ 29-4116 through 29-4125 (Cum. Supp. 2002). After the DNA testing was completed, Bronson filed a "Motion for Hearing and to Vacate Convictions" based on the results. The motion was denied, and the appeal of that denial is case No. S-03-040. Bronson subsequently moved for a new trial based on the DNA testing results. The motion was denied, and the appeal of the denial of the motion for new trial is case No. S-03-483. Cases Nos. S-03-040 and S-03-483 have been consolidated on appeal. For the reasons explained below, we affirm the order of the district court in each case.

## II. STATEMENT OF FACTS

On January 14, 1992, Bronson was found guilty of first degree murder and use of a weapon to commit a felony. Bronson

was sentenced to life imprisonment for the murder conviction and to a consecutive term of 20 years for the weapons conviction. In affirming the convictions and sentences, we set forth the facts of the case in *Bronson* as follows:

Barbara Smith was found dead by her husband the morning of June 28, 1991. The cause of death was determined to be multiple stab wounds to the chest and blunt injuries to the face and head. No evidence indicated forcible entry. As the Omaha Police Division crime lab searched the scene for fingerprints and other physical evidence, other officers contacted persons in the area regarding any information they may have had about the murder. Bronson, who lived two homes away from the victim, was questioned as he was returning from work. He indicated that he had last been to the Smith residence on June 27 to borrow $5 from Ken Smith, the victim's husband. On June 29 the police requested that appellant, as well as all other individuals known to have been in the Smith residence recently, go over to another neighbor's residence to be fingerprinted. One of Bronson's latent palm prints was found on the refrigerator and one of his patent fingerprints was observed in apparent blood on exhibit 9, a glass vase at the crime scene. Dr. Reena Roy, a forensic serologist, testified that a presumptive test for blood on the vase was positive. Linda Brokofsky, a fingerprint examiner for the Nebraska State Patrol, stated that she found a fingerprint in blood on the vase. Patricia Osier, a senior crime lab technician with the Omaha Police Division examined the vase and found a fingerprint in what appeared to be blood.

On Monday, July 1, Police Officer Bill Jadlowski and Detective Wilson went to Bronson's home to ask him to accompany them to police headquarters for further interview. The officers arrived at the house and at about the same time Bronson was walking up the sidewalk. According to Jadlowski, the officers asked Bronson if they could step inside his residence and, once inside, explained to Bronson that they would like to "talk to him at Central Police Headquarters." Bronson was then taken to the police station. According to the officer, Bronson was not threatened,

coerced, or promised anything, was not told he was under arrest, was not handcuffed, and rode in the back seat of the unmarked police car with the two officers in the front. Bronson, according to Jadlowski, was calm and cooperative.

Prior to having his *Miranda* rights explained to him, Bronson relayed the same story as to when he had last been in the Smith residence, and admitted that he was a recreational user of crack cocaine. When the police questioned him about several cuts on his hands, he explained that he had received a cut on his finger at work, and the other cuts on his hands were as a result of cleaning a crack-pipe with a wire coat hanger. At this point, the officers left the interrogation room for a short period, obtained a search warrant, returned to the interrogation room, and read Bronson his Miranda rights. Because Bronson indicated he wanted to see his attorney, the interrogation ceased. The officers returned Bronson to his home and proceeded with the execution of the warrant to search the Bronson residence. Sometime later Bronson was allowed to leave his home.

On Wednesday Bronson learned that a warrant for his arrest for first degree murder had been issued, and by arrangements made with the police by his lawyer, Bronson turned himself in on Friday morning.

At trial, Bronson supplemented his original statement, saying that while he had been in the house to borrow money, he also had visited the deceased, Barbara Smith, in her home earlier that week for the purpose of carrying on a romantic affair with her.

242 Neb. at 934-36, 496 N.W.2d at 887-88.

On March 25, 2002, Bronson filed an amended motion for DNA testing under § 29-4120 of the DNA Testing Act. The evidence that he sought to have tested included the vase found at the crime scene which exhibited Bronson's fingerprint in what appeared to be blood, a bloodstained doorknob and various other items of evidence from the victim's home, and a laundry detergent bottle and various other bloodstained items that were seized from Bronson's home. On May 9, the court granted Bronson's motion for DNA testing of the evidence identified by Bronson in his amended motion.

The University of Nebraska Medical Center's human DNA identification laboratory issued a report on July 29, 2002, regarding the results of DNA testing of the evidence in Bronson's case. With regard to the vase found in the victim's home, the report stated that the substance on the vase generated partial DNA profiles and that results concerning contributors to the partial profiles were inconclusive. With regard to the doorknob in the victim's home, the report stated that swabs from the doorknob generated a partial DNA profile consistent with a mixture of Bronson's blood and the victim's blood. Finally, with regard to the laundry detergent bottle found in Bronson's home, the report stated a swab from the bottle generated a DNA profile consistent with Bronson's blood.

On December 4, 2002, pursuant to § 29-4123(2), Bronson moved the district court for an order vacating and setting aside the judgment on the basis of the DNA testing results. In the motion, Bronson asserted that the DNA testing failed to establish that the fingerprint on the vase was made in the blood of either Bronson or the victim or even that the substance was human blood. Bronson also asserted that the DNA testing which established that the doorknob from the victim's home contained DNA consistent with a mixture of Bronson's blood and the victim's blood supported his story that he had been at the victim's home twice in the days preceding the victim's death. Finally, Bronson asserted that the DNA testing established that the blood on the items seized from his home was his blood and not that of the victim. Given the results of the DNA testing, Bronson claimed that the judgment should be vacated and set aside.

After a hearing on December 12, 2002, the court found that the DNA testing results did not exonerate or exculpate Bronson. The court therefore denied Bronson's motion for an order vacating and setting aside the judgment. On January 3, 2003, Bronson filed a notice of appeal regarding the court's order. The appeal of the December 12 order denying Bronson's motion to vacate and set aside the judgment is case No. S-03-040.

On March 11, 2003, pursuant to Neb. Rev. Stat. § 29-2101(6) (Cum. Supp. 2002), Bronson filed a motion for new trial based on newly discovered exculpatory DNA evidence. Bronson made the same allegations regarding the significance of the results of the

DNA testing that he had made in his motion under § 29-4123(2). Bronson claimed that the DNA test results warranted a new trial. After determining that Bronson's motion for new trial was filed within the time period contemplated under Neb. Rev. Stat. § 29-2103 (Cum. Supp. 2002) and that it had jurisdiction to consider the motion, the district court denied Bronson's motion for new trial in an order dated April 21, 2003. On April 24, Bronson filed a notice of appeal of the denial of his motion for new trial. The appeal of the April 21 order denying Bronson's motion for new trial is case No. S-03-483. We granted Bronson's motion to consolidate the two appeals for briefing and oral argument.

### III. ASSIGNMENTS OF ERROR

Bronson asserts that the district court erred in (1) failing to vacate and set aside the judgment pursuant to § 29-4123(2) in case No. S-03-040 and (2) failing to grant a new trial based on newly discovered DNA evidence pursuant to § 29-2101(6) in case No. S-03-483.

### IV. ANALYSIS

#### 1. S-03-040: MOTION TO VACATE AND SET ASIDE JUDGMENT UNDER § 29-4123(2)

#### (a) Appealability of Denial of Motion to Vacate and Set Aside Judgment Under § 29-4123(2)

The State claims that the denial of a motion to vacate and set aside the judgment made pursuant to § 29-4123(2) is not an appealable, final order and that therefore this court does not have jurisdiction to consider Bronson's appeal in case No. S-03-040. We reject the State's argument.

Section 29-4123 provides:

> (1) The results of the final DNA or other forensic testing ordered under subsection (5) of section 29-4120 shall be disclosed to the county attorney, to the person filing the motion, and to the person's attorney.
>
> (2) Upon receipt of the results of such testing, any party may request a hearing before the court when such results exonerate or exculpate the person. Following such hearing, the court may, on its own motion or upon the motion of any party, vacate and set aside the judgment and release the

person from custody based upon final testing results exonerating or exculpating the person.

(3) If the court does not grant the relief contained in subsection (2) of this section, any party may file a motion for a new trial under sections 29-2101 to 29-2103.

The district court denied Bronson's motion under § 29-4123(2) on December 12, 2002, and on January 3, 2003, Bronson appealed the denial of his § 29-4123(2) motion.

■ The three types of final orders which may be reviewed on appeal under the provisions of Neb. Rev. Stat. § 25-1902 (Reissue 1995) are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. *State v. Lauck*, 261 Neb. 145, 621 N.W.2d 515 (2001).

■ In *State v. Silvers*, 255 Neb. 702, 708-09, 587 N.W.2d 325, 331 (1998), we stated that "[s]pecial proceedings entail civil statutory remedies not encompassed in chapter 25 of the Nebraska Revised Statutes" and that "[s]pecial proceedings have also been described as 'every special statutory remedy which is not in itself an action.'" Thus, for example, in *Silvers*, we identified postconviction proceedings as "special proceedings" within the context of § 25-1902. Applying the foregoing definition of special proceeding to the instant case, we conclude that a hearing under § 29-4123(2) is a "special proceeding" within the meaning of the final order statutes.

■ Because the proceeding at issue was a special proceeding, the denial of Bronson's motion under § 29-4123(2) is an appealable order if it affects a substantial right. A substantial right is an essential legal right, not a mere technical right. *State v. Meese*, 257 Neb. 486, 599 N.W.2d 192 (1999).

■ The State argues that the denial of a motion under § 29-4123(2) does not affect a substantial right because the defendant can be afforded relief by filing a motion for new trial and the defendant should be required to await a ruling on a motion for new trial before being allowed to appeal the denial of a motion made under § 29-4123(2). In this regard, we note that in *State v. Gibbs*, 253 Neb. 241, 570 N.W.2d 326 (1997), we held

that the denial of a motion to discharge based on speedy trial grounds affected a substantial right and was an appealable order. Similarly, in *State v. Milenkovich*, 236 Neb. 42, 458 N.W.2d 747 (1990), we held that the denial of a plea in bar raising a non-frivolous double jeopardy claim was a final, appealable order because it affected a substantial right in a special proceeding. In both *Gibbs* and *Milenkovich*, we noted that the rights of the accused would be significantly undermined if appellate review were postponed. In the present case, despite the option to move for a new trial based on DNA testing evidence as identified in § 29-4123(3), we determine that a substantial right is nevertheless affected because, where relief is indicated but not afforded, a defendant has lost the right to be immediately released from custody without being exposed to further delay, expense, and the risk inherent in a new trial. In sum, Bronson's rights conferred by § 29-4123(2) would be significantly undermined if appellate review were postponed. See, *Gibbs, supra*; *Milenkovich, supra*. We therefore conclude that the denial of a motion to vacate and set aside the judgment under § 29-4123(2) affects a substantial right in a special proceeding and is therefore an appealable order under § 25-1902.

(b) Required Proof Under § 29-4123(2)

We have not previously reviewed a district court's ruling on a motion to vacate and set aside the judgment under § 29-4123(2) based on DNA testing evidence. We therefore take this opportunity to address the proof required to succeed on such a motion.

A motion to vacate and set aside the judgment pursuant to § 29-4123(2) is similar to a motion to dismiss in a criminal case. With respect to motions to dismiss, we have stated:

> In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained.

*State v. Bao*, 263 Neb. 439, 448, 640 N.W.2d 405, 413 (2002). Because of the similarity to a motion to dismiss, we determine that a standard comparable to that which is applied to a motion to dismiss in a criminal case should apply with respect to a motion

under § 29-4123(2). We hold that a court may properly grant a motion to vacate and set aside the judgment under § 29-4123(2) when (1) the DNA testing results exonerate or exculpate the person and (2) the results, when considered with the evidence of the case which resulted in the underlying judgment, show a complete lack of evidence to establish an essential element of the crime charged. This requires a finding that guilt cannot be sustained because the evidence is doubtful in character and completely lacking in probative value.

## 2. S-03-483: MOTION FOR NEW TRIAL UNDER § 29-2101(6)

### (a) District Court's Jurisdiction to Consider Motion for New Trial Under § 29-2101(6)

As an adjunct to its assertion in case No. S-03-040 that the denial of Bronson's motion under § 29-4123(2) was not an appealable order, the State argues in case No. S-03-483 that if it is concluded that the order denying the motion to vacate and set aside the judgment is appealable, then Bronson's appeal of that order deprived the district court of jurisdiction to consider the motion for new trial under § 29-2101(6) while the first appeal was pending. We reject the State's argument and conclude that the district court had jurisdiction to consider the motion for new trial under § 29-2101(6) during the pendency of the appeal of the denial of the motion to vacate and set aside the judgment under § 29-4123(2).

Section 29-2101 provides that "[a] new trial, after a verdict of conviction, may be granted, on the application of the defendant, for any of the following grounds affecting materially his or her substantial rights: . . . (6) newly discovered exculpatory DNA or similar forensic testing evidence obtained under the DNA Testing Act . . . ."

Although the evidence supporting a motion for new trial pursuant to § 29-2101(6) is obtained under the DNA Testing Act, the motion for new trial under § 29-2101(6) is not part of the DNA Testing Act. A motion for new trial under § 29-2101(6) based on newly discovered evidence is akin to a motion for new trial based on newly discovered evidence under § 29-2101(5). We have long held that the appeal of a conviction in the appellate court and the consideration of a motion for new trial on the

ground of newly discovered evidence filed in a trial court may be separately conducted in both courts at the same time. *Smith v. State*, 167 Neb. 492, 93 N.W.2d 499 (1958). We stated in *Smith* that "the two proceedings . . . should be conducted separately and independently of each other, and that such independent conduct by the [trial] court could not be regarded [by the Legislature or the courts] as an invasion of the jurisdiction of the [appellate court]." 167 Neb. at 494, 93 N.W.2d at 500.

In the same respect, we note that § 29-4123(3) provides that "[i]f the court does not grant the relief contained in subsection (2) of this section, any party may file a motion for new trial under sections 29-2101 to 29-2103." The legislative direction that the filing of a motion for new trial be made "under sections 29-2101 to 29-2103" indicates that the motion for new trial is a separate and independent proceeding from the proceedings under the DNA Testing Act. We therefore conclude that the appeal of a ruling denying a motion to vacate and set aside the judgment under § 29-4123(2) of the DNA Testing Act does not deprive a trial court of jurisdiction to consider a motion for new trial filed under § 29-2101(6) based on newly discovered evidence obtained under the DNA Testing Act.

(b) Required Proof Under § 29-2101(6)
and Appellate Review

We have not previously reviewed a district court's ruling on a motion for new trial under § 29-2101(6) based on evidence obtained pursuant to the DNA Testing Act. We therefore take this opportunity to address the proof required to succeed on such a motion and the standard of review an appellate court should apply to the trial court's ruling on a motion for new trial under § 29-2101(6).

With respect to the trial court's consideration of a motion for new trial based on newly discovered evidence, we have stated in a similar context under § 29-2101(5) that where a motion for new trial is based on newly discovered evidence, such " ' "evidence must be of such a nature that if it had been offered and admitted at the former trial it probably would have produced a substantially different result." . . .' " *State v. Boppre*, 243 Neb. 908, 924, 503 N.W.2d 526, 536 (1993). We have further stated that "[a]

motion for new trial based on newly discovered evidence is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed." *State v. Bjorklund*, 258 Neb. 432, 496, 604 N.W.2d 169, 220 (2000). We determine that the standards just quoted are applicable to motions for new trial pursuant to § 29-2101(6) based on newly discovered evidence obtained under the DNA Testing Act.

Bronson urges that because § 29-2101(6) refers to exculpatory evidence obtained "under the DNA Testing Act," the definition of "exculpatory evidence" provided in the DNA Testing Act sets the exclusive standard by which a trial court must decide a motion for new trial under § 29-2101(6). In this regard, we note that the DNA Testing Act defines "exculpatory evidence" as "evidence which is favorable to the person in custody and material to the issue of guilt of the person in custody." § 29-4119. Bronson argues that a trial court should grant a new trial based on newly discovered evidence obtained under the DNA Testing Act if such evidence is merely "favorable to the person in custody and material to the issue of guilt of the person in custody." Brief for appellant at 5.

A review of §§ 29-2101(6) and 29-4123(3) taken together shows that although § 29-4123(3) refers to the new trial statutes and § 29-2101(6) refers to "exculpatory evidence" under the DNA Testing Act, such reference in § 29-2101(6) is for the purpose of defining the proper basis for bringing a motion explicitly under § 29-2101(6). Thus, although "exculpatory evidence" may support filing a motion for new trial under § 29-2101(6), the existence of such evidence does not invariably warrant the granting of a new trial. A motion for new trial under § 29-2101(6), properly brought within the timeframe allowed under § 29-2103(5), must be based on "exculpatory . . . evidence obtained under the DNA Testing Act." Where the trial court determines that the evidence meets the definition of "exculpatory evidence" under § 29-4119, thus justifying the filing of a motion for new trial, the trial court must then proceed to consider whether the newly discovered evidence warrants a new trial. We conclude that to warrant a new trial, the trial court must determine that newly discovered exculpatory evidence obtained pursuant to the DNA Testing Act must

be of such a nature that if it had been offered and admitted at the former trial, it probably would have produced a substantially different result.

### 3. ANALYSIS OF MERITS IN CASES
### NOS. S-03-040 AND S-03-483

In the district court and on appeal, Bronson claimed certain DNA-tested evidence exonerated or exculpated him. Bronson relied on the results of three main pieces of DNA-tested evidence. Those items as described by Bronson are (1) the DNA tests on the substance on the vase which Bronson asserts was not proved to be human blood, (2) the DNA material on the doorknob of the victim's house which Bronson states was proved to be his, and (3) the DNA material on items found in Bronson's home which Bronson states was not proved to belong to the victim.

With respect to the vase, the DNA testing did not establish that the substance was not human blood. Furthermore, the DNA-tested evidence is not inconsistent with the evidence presented at trial which indicated that the substance likely was blood. In sum, the import of the evidence remains that Bronson's fingerprint was on the vase regardless of whether the substance making the fingerprint was the victim's blood or some other substance. The evidence of Bronson's fingerprint on the vase is not inconsistent with guilt.

With respect to the doorknob, Bronson argues that evidence that his blood was on the doorknob at the victim's home supports his story that he was at the house in the days prior to the murder. Contrary to Bronson's argument, the DNA testing results do not establish when the DNA evidence was left and it could rationally be inferred that the blood was left on the doorknob at the time of the killing rather than days earlier as Bronson asserts. Thus, the fact that Bronson was in the house at an earlier date does not disprove that he was also at the house at the time of the murder. Bronson's blood on the doorknob is not inconsistent with guilt.

With respect to the blood found on items in Bronson's home, Bronson notes that the DNA testing established that the blood on these items did not belong to the victim. In response, the State points out that while testing of some of the blood indicates that it was Bronson's rather than that of the victim, testing of

other stains was inconclusive. Had Bronson cut himself during the murder, the fact that the blood on the items in Bronson's home was his rather than the victim's blood is not inconsistent with guilt.

In sum, the DNA testing results do not warrant the relief Bronson seeks. The evidence obtained under the DNA Testing Act is not of such a nature that if it had been offered and admitted at the former trial, it probably would have produced a substantially different result. We therefore conclude that the district court did not abuse its discretion by denying Bronson's motion for new trial under § 29-2101(6), and we affirm the court's ruling in case No. S-03-483.

Because we determine that the evidence obtained under the DNA Testing Act does not warrant a new trial, a fortiori, the same evidence does not warrant vacating and setting aside the judgment. When the DNA testing results are considered in association with the evidence presented in connection with the case which resulted in the underlying judgment, we cannot say there was a complete failure of evidence to establish an essential element of the crime charged or that the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. We therefore conclude that the district court did not err in denying Bronson's motion to vacate and set aside the judgment under § 29-4123(2), and we affirm the court's ruling in case No. S-03-040.

## V. CONCLUSION

We conclude that the order denying Bronson's motion to vacate and set aside the judgment under § 29-4123(2) is an appealable order and that during the pendency of the appeal of that order, the district court had jurisdiction to consider Bronson's motion for new trial under § 29-2101(6). We further conclude that the district court did not err in denying both motions. We therefore affirm the rulings in both cases Nos. S-03-040 and S-03-483.

AFFIRMED.

McCORMACK, J., not participating.