STATE OF NEBRASKA, APPELLEE, V.
MOHAMED EL-TABECH, APPELLANT.
696 N.W.2d 445

Filed May 13, 2005.   No. S-04-527.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Mohamed El-Tabech appeals from the judgment of the Lancaster County District Court which held that the results of DNA testing did not afford him relief in the form of an order vacating or setting aside his convictions and sentences or an order granting him a new trial.

## SCOPE OF REVIEW

A motion for new trial based on newly discovered exculpatory evidence obtained pursuant to the DNA Testing Act, Neb.

Rev. Stat. §§ 29-4116 to 29-4125 (Cum. Supp. 2004), is addressed to the discretion of the district court, and unless an abuse of discretion is shown, the court's determination will not be disturbed. *State v. Buckman*, 267 Neb. 505, 675 N.W.2d 372 (2004).

■ To warrant a new trial, the district court must determine that newly discovered exculpatory evidence obtained pursuant to the DNA Testing Act is of such a nature that if it had been offered and admitted at the trial, it probably would have produced a substantially different result. See *State v. Buckman, supra.*

## FACTS

On June 24, 1984, police and emergency personnel were dispatched to El-Tabech's home. The paramedic who entered the home first saw El-Tabech seated on the floor, rocking back and forth and pointing to the back of the house. Lynn El-Tabech, El-Tabech's wife, was found lying on a bed with a white terry cloth bathrobe belt tied so tightly around her neck that it had to be cut off with scissors. Both the condition and temperature of the victim's body indicated that she had not been dead for very long.

During the trial, circumstantial evidence was produced which indicated that El-Tabech had killed his wife. A neighbor testified to hearing a long argument between the couple on the day of the murder. A member of El-Tabech's church testified that El-Tabech had called him numerous times on the day of the murder. El-Tabech sounded upset and wanted to talk about problems he was having with his wife. El-Tabech told the man that El-Tabech's wife was leaving him.

A waitress testified that she waited on El-Tabech and his wife the day of the murder and that the couple had argued loudly. Another neighbor's testimony placed El-Tabech at the scene of the crime during the estimated time of death. The victim's mother and sister testified that El-Tabech was controlling of his wife's behavior and that she often did not favor the attention that he bestowed upon her.

At trial, Dr. Reena Roy testified regarding tests that had been performed on physical evidence gathered from the crime scene. Bloodstains on a pillowcase and the robe the victim was wearing were found to be consistent with the victim's blood. A tuft of hair was found in the knot of the belt used to kill the victim. Roy testified that the seven hairs in the tuft were consistent with the

victim's hair. An additional hair had fallen from the belt when the evidence was gathered. Roy testified that this hair could not be identified as belonging to either El-Tabech or the victim.

El-Tabech was convicted of first degree murder and use of a deadly weapon to commit a felony. See *State v. El-Tabech*, 225 Neb. 395, 405 N.W.2d 585 (1987). He was sentenced to life imprisonment for the murder conviction and 20 years' imprisonment for the use of a deadly weapon conviction, with the sentences to run consecutively. We affirmed the convictions and sentences. *Id.*

In *State v. El-Tabech*, 234 Neb. 831, 453 N.W.2d 91 (1990), we addressed El-Tabech's motion for postconviction relief on the ground that his convictions were unconstitutional because he was not afforded effective assistance of counsel. We found no merit to his arguments.

El-Tabech next brought a motion pursuant to Nebraska's postconviction statutes seeking to compel state-funded DNA testing. In *State v. El-Tabech*, 259 Neb. 509, 610 N.W.2d 737 (2000), we affirmed the district court's denial of this motion, holding that there was no recourse then available by which a prisoner alleging actual innocence could bring a claim after the time period had run for bringing a motion for new trial based on newly discovered evidence. We further held that there was no statutory means by which a prisoner could compel state-funded DNA testing at that time.

In 2001, the Legislature enacted the DNA Testing Act, which permits a person in custody, at any time after conviction, to request DNA testing of certain biological material. El-Tabech subsequently filed a motion to compel the testing of evidence pursuant to the DNA Testing Act.

An evidentiary hearing was held in the Lancaster County District Court on December 17, 2002. At the hearing, testimony was adduced from Roy regarding the tests that had been performed on the physical evidence found at the crime scene. The district court then ordered DNA testing of 29 pieces of evidence, including the seven hairs found in the knot made from the bathrobe belt that was used to strangle the victim. Also tested was the hair that had fallen off the belt when the evidence was gathered at the crime scene.

On February 26, 2004, a hearing was held concerning the results of the testing. After the hearing, but prior to the filing of a motion to vacate or set aside the judgment or a motion for new trial, the district court issued an order stating that it viewed "this stage of the proceeding as a Motion Vacate [sic] and Set Aside the Judgment, or, in the alternative a Motion for New Trial."

The district court held that the test results warranted neither an order vacating and setting aside the judgment nor an order granting a new trial. El-Tabech timely perfected an appeal.

## ASSIGNMENT OF ERROR

El-Tabech assigns as error the district court's failure to find the new DNA evidence sufficient to set aside his convictions and grant him a new trial.

## ANALYSIS

In this case, we examine a decision made by the district court pursuant to § 29-4120 of the DNA Testing Act, which provides in part:

(1) Notwithstanding any other provision of law, a person in custody pursuant to the judgment of a court may, at any time after conviction, file a motion, with or without supporting affidavits, in the court that entered the judgment requesting forensic DNA testing of any biological material that:

(a) Is related to the investigation or prosecution that resulted in such judgment;

(b) Is in the actual or constructive possession or control of the state or is in the possession or control of others under circumstances likely to safeguard the integrity of the biological material's original physical composition; and

(c) Was not previously subjected to DNA testing or can be subjected to retesting with more current DNA techniques that provide a reasonable likelihood of more accurate and probative results.

Section 29-4123 provides guidance for dealing with the results of such testing:

(2) Upon receipt of the results of such testing, any party may request a hearing before the court when such results exonerate or exculpate the person. Following such hearing, the court may, on its own motion or upon the motion of any

party, vacate and set aside the judgment and release the person from custody based upon final testing results exonerating or exculpating the person.

(3) If the court does not grant the relief contained in subsection (2) of this section, any party may file a motion for a new trial under sections 29-2101 to 29-2103.

In *State v. Buckman*, 267 Neb. 505, 518, 675 N.W.2d 372, 383 (2004), we set out the procedural framework for seeking relief pursuant to the DNA Testing Act:

First, a movant may obtain DNA testing if, inter alia, the testing may produce noncumulative, exculpatory evidence relevant to the claim that the person was wrongfully convicted or sentenced. See § 29-4120(5). Second, the court may vacate and set aside the judgment in circumstances where the DNA testing results are either completely exonerative or highly exculpatory—when the results, when considered with the evidence of the case which resulted in the underlying judgment, show a complete lack of evidence to establish an essential element of the crime charged. See, § 29-4123(2); [*State v.*] *Bronson*, [267 Neb. 103, 672 N.W.2d 244 (2003)]. This requires a finding that guilt cannot be sustained because the evidence is doubtful in character and completely lacking in probative value. Third, in other circumstances where the evidence is merely exculpatory, the court may order a new trial if the newly discovered exculpatory DNA evidence is of such a nature that if it had been offered and admitted at the former trial, it probably would have produced a substantially different result. See, §§ 29-4123(3) and 29-2101(6); *Bronson, supra.*

El-Tabech admits that the DNA test results in the case at bar do not exonerate him. As such, he does not argue that the district court erred in denying him the relief afforded by § 29-4123(2). Instead, he contends that the results warrant a new trial pursuant to Neb. Rev. Stat. § 29-2101(6) (Cum. Supp. 2004) (newly discovered exculpatory DNA evidence obtained under DNA Testing Act). El-Tabech asserts that the language of § 29-2101, when read in pari materia, warrants that a new trial should be granted when there is a basis to believe that the DNA test results "could reasonably have produced a different result." Brief for appellant at 15.

El-Tabech argues that the test results with respect to the seven hairs found in the knot of the belt used to murder the victim dramatically change the nature of the circumstantial case against him. He contends that because the State's expert testified at trial that the seven hairs came from the victim, but the testing showed that one of these hairs could not be identified as belonging to either the victim or El-Tabech, some other person was obviously present at the time of the murder. He claims that had he known at the time of trial that one of the hairs belonged to neither him nor the victim, the defense strategies and arguments would clearly have been different.

In the case at bar, the issue is whether the DNA test results, if admitted at trial, probably would have produced a substantially different result. The DNA Testing Act permits the testing of relevant biological material and provides the means by which a person in custody may seek relief based upon newly discovered exculpatory DNA test results obtained after the statutory time period for requesting a new trial based upon newly discovered evidence has expired.

In *State v. Bronson*, 267 Neb. 103, 112-13, 672 N.W.2d 244, 251-52 (2003), we stated:

> We have not previously reviewed a district court's ruling on a motion for new trial under § 29-2101(6) based on evidence obtained pursuant to the DNA Testing Act. We therefore take this opportunity to address the proof required to succeed on such a motion and the standard of review an appellate court should apply to the trial court's ruling on a motion for new trial under § 29-2101(6).

> With respect to the trial court's consideration of a motion for new trial based on newly discovered evidence, we have stated in a similar context under § 29-2101(5) that where a motion for new trial is based on newly discovered evidence, such " ' "evidence must be of such a nature that if it had been offered and admitted at the former trial it probably would have produced a substantially different result.". . .' " *State v. Boppre*, 243 Neb. 908, 924, 503 N.W.2d 526, 536 (1993). We have further stated that "[a] motion for new trial based on newly discovered evidence is addressed to the discretion of the trial court, and unless an abuse of discretion

is shown, the trial court's determination will not be disturbed." *State v. Bjorklund*, 258 Neb. 432, 496, 604 N.W.2d 169, 220 (2000). We determine that the standards just quoted are applicable to motions for new trial pursuant to § 29-2101(6) based on newly discovered evidence obtained under the DNA Testing Act.

El-Tabech claims that the defendant's burden of proof in a motion for new trial based on newly discovered DNA evidence is too strict. In support of this contention, he points out that this standard is higher than the burden of proof for certain constitutional violations, such as ineffective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). El-Tabech asserted at oral arguments before this court that he should have succeeded on his request for a new trial if the test results would have been material to the defense at trial. This argument fails to consider the rationale behind the requirement of a higher burden of proof for granting relief based upon newly discovered evidence as opposed to a claim of ineffective assistance of counsel.

An ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

A defendant who requests a new trial based upon newly discovered evidence faces a higher standard. Such a request is not based upon a claim that the defendant did not receive a fair trial or that a fundamental right was violated. Fundamental rights under the Constitution are not implicated in such a motion.

> The high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged. . . . An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower.

*Strickland v. Washington*, 466 U.S. at 694.

In considering a motion for new trial based upon newly discovered evidence pursuant to either § 29-2101(5) or (6), we apply a higher standard in order to promote the finality of the judgment based upon the presumption that the defendant received a fair trial and no fundamental rights were violated. In *State v. Buckman*, 267 Neb. 505, 675 N.W.2d 372 (2004), we restated the standard to be applied to motions pursuant to § 29-2101(6). In doing so, we rejected the defendant's argument that this standard was too restrictive and that a movant should be entitled to have his conviction vacated and set aside if the results of DNA testing showed a reasonable probability that the result of the proceeding would have been different had the DNA evidence been available at trial.

The proper standard for reviewing motions for new trial pursuant to § 29-2101(6) is the same as the standard for reviewing a motion for new trial based upon newly discovered evidence pursuant to § 29-2101(5). To warrant a new trial, the district court must determine that newly discovered exculpatory evidence obtained pursuant to the DNA Testing Act is of such a nature that if it had been offered and admitted at the trial, it probably would have produced a substantially different result. See *State v. Buckman, supra.* A motion for new trial based on newly discovered exculpatory evidence obtained pursuant to the DNA Testing Act is addressed to the discretion of the district court, and unless an abuse of discretion is shown, the court's determination will not be disturbed. *Id.*

Applying the standard of review for motions for new trial pursuant to § 29-2101(6) to the case at bar, it is clear that the district court did not abuse its discretion in denying El-Tabech's request for a new trial. The district court ordered that DNA testing be conducted on 29 pieces of evidence, including the seven hairs found in the knot made by the bathrobe belt used to strangle the victim, El-Tabech's wife. Also tested was a hair that had fallen off the belt when evidence was gathered at the crime scene.

In its order, the district court commented on the results of the testing:

> [Twenty six] hairs from various locations were subjected to DNA testing. Seven of the hairs submitted had insufficient material to conduct a test. Eighteen of the hairs belonged either to the defendant or the victim. One hair that fell from

the belt that was tied around the victim's neck could not be identified at trial, but DNA testing established that it belonged to the defendant. One of the seven hairs in the knot in the belt was found through DNA testing to be neither the defendant's nor the victim's. At trial it was thought that all seven belonged to either the defendant or victim. Three items containing blood stains were submitted for DNA testing. All blood stains were determined to come from the victim.

The district court noted that the evidence relating to the hairs found at the crime scene was so insignificant that it was not even mentioned in this court's discussion of the facts on direct appeal in *State v. El-Tabech*, 225 Neb. 395, 405 N.W.2d 585 (1987). Regarding the hair that was found to belong to neither El-Tabech nor the victim, the district court held that, at a minimum, because the hair was found bound in the knot, the hair was present before the murder.

El-Tabech argues that the results of the DNA testing dramatically change the nature of the circumstantial case against him. He contends that because the testing showed that one of the hairs from the knot in the belt could not be identified as belonging to either the victim or El-Tabech, some other person was obviously present at the time of the killing. He claims that the defense strategies and arguments clearly would have been different had he known of these results.

The results of the DNA testing revealed two new facts: (1) one of the seven hairs found in the knot in the belt belonged to neither the victim nor El-Tabech and (2) the hair that fell from the belt during the gathering of evidence belonged to El-Tabech. However, this new evidence does not establish that a substantially different result probably would have been produced had these facts been presented at trial.

The State's expert testified at trial that the hair which fell from the belt could not be identified as coming from either the victim or El-Tabech. Thus, the jury was presented with a hair of unknown origin that had originated, but later fallen, from the belt used to strangle the victim. The results of the DNA testing placed a hair of unknown origin in the knot in the belt, rather than falling from the belt during the gathering of evidence. We cannot say that had the jury known that a hair of unknown origin was in the knot,

the evidence probably would have produced a substantially different result.

The evidence presented at trial can be summarized as follows: A neighbor placed El-Tabech at the scene of the crime during the estimated time of his wife's murder. When authorities arrived at the scene, El-Tabech was sitting on the floor and apparently had not attempted to remove the belt that was used to strangle his wife. Another neighbor testified to hearing a long argument between the couple on the day of the murder. A member of El-Tabech's church testified that El-Tabech had called him numerous times on the day of the murder. El-Tabech sounded upset and wanted to talk about problems he was having with his wife. El-Tabech told the man that El-Tabech's wife was leaving him. A waitress testified that she had waited on El-Tabech and his wife the day of the murder and that the couple argued loudly.

It cannot be said that the evidence from the DNA testing probably would have produced a substantially different result at trial. As such, the district court did not abuse its discretion in denying El-Tabech's request for a new trial.

## CONCLUSION

The newly discovered DNA evidence is not of such a nature that it probably would have produced a substantially different result if it had been offered and admitted at trial. The district court did not abuse its discretion in concluding that El-Tabech was not entitled to relief pursuant to the DNA Testing Act. For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED.