STATE OF NEBRASKA, APPELLEE, V. STANLEY POE,
ALSO KNOWN AS STANLEY A. POE, APPELLANT.

665 N.W.2d 654

Filed July 25, 2003.   Nos. S-02-351, S-02-433.

Matthew L. McBride for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## I. INTRODUCTION

Stanley Poe appeals from an order of the Douglas County District Court denying his motion requesting forensic DNA testing of a cigarette butt found at the scene of a 1990 robbery for which Poe was convicted. Pursuant to Neb. Rev. Stat. § 24-1106(2) (Reissue 1995), we granted Poe's petition to bypass.

## II. FACTUAL BACKGROUND

Poe was convicted of robbery after a jury trial on October 11, 1990. After an enhancement hearing, the trial court determined that Poe was a habitual criminal and sentenced him to a term of 15 to 30 years' imprisonment. This conviction was affirmed by the Nebraska Court of Appeals. *State v. Poe*, 1 NCA 379 (1992).

On October 11, 2001, Poe filed a pro se motion for DNA testing pursuant to the DNA Testing Act, as codified at Neb. Rev. Stat. §§ 29-4116 to 29-4125 (Supp. 2001). See 2001 Neb. Laws, L.B. 659 (effective September 1, 2001). The motion requested DNA testing of a cigarette butt found at the scene of the robbery

for which Poe was convicted and further requested that following such testing, Poe be appointed counsel to assist him in "exonerating him[self] of this crime." A hearing was held on Poe's motion on February 20, 2002. In a written order entered March 5, 2002, the district court denied Poe's motion, stating in part:

> The witnesses testified that the robber smoked a filter cigarette.
>
> . . . .
>
> . . . However, testing would not be warranted in this situation because such testing would not produce, could not produce, "non-cumulative, exculpatory evidence relevant to the claim that the person was wrongfully convicted or sentenced." In this case, the investigating officer testified that the cigarette butt was kept for investigative purposes, to see whether it might match the brand that a potential suspect smoked. *I have been unable to find any other evidence in the trial transcript relating this cigarette butt to* [Poe]. For all we, or anyone knows, the cigarette butt has no connection to him at all. It was simply an item that the police retained as part of their investigation.
>
> . . . Poe argues that the state did use this cigarette butt to convict him, as it was marked, offered, and received into evidence. And that's true, but only in a larger sense. The cigarette butt was received into evidence, to show the jury the investigation that the Department did. However, the transcript doesn't show that counsel ever argued that this was [Poe]'s cigarette. It's entirely possible that the cigarette butt didn't belong to [Poe]. DNA testing isn't going to help resolve the issue of [Poe]'s guilt. The jury, in evaluating the eyewitness testimony, resolved that issue.

(Emphasis supplied.) Poe timely appealed. Thereafter, the district court sustained Poe's motion for appointment of counsel to represent Poe in the appellate process.

Poe's 1990 robbery conviction was based on the testimony of two eyewitnesses: Jennifer Annin and Alicia Klabunde. Both witnesses were employees at the retail clothing store Poe was convicted of robbing. Both testified that a male entered the store on the evening of the robbery. Annin assisted the man in looking for a birthday gift for his daughter. The man ultimately purchased a

pair of shorts and left the store. Annin and Klabunde then began to straighten the store in anticipation of closing time.

Approximately 1 hour later, the same man reentered the store, stating he wanted to return the shorts he had just purchased. After the transaction was completed, the man told Annin to "put the money in the bag." Believing the man was referring to the refunded money, Annin complied with the request. However, as Annin attempted to close the cash register drawer, the man put his hand in the drawer and demanded the money from the drawer. Klabunde, who was in the back of the store, observed this encounter and telephoned the 911 emergency dispatch service. Meanwhile, the man struck Annin, knocking her to the ground. The assailant then grabbed the money from the cash register drawer and left the store.

Approximately 2 to 3 weeks after the robbery occurred, Annin and Klabunde were shown a photographic array and each identified Poe as the perpetrator. Annin and Klabunde testified to this identification at Poe's trial. In his defense, Poe called two witnesses who testified that Poe was at a movie theater when the robbery occurred. The jury convicted Poe of the robbery.

The record from Poe's trial was received into evidence in support of Poe's request for DNA testing. The record discloses that the cigarette butt which Poe wants tested was mentioned by Klabunde and investigating officer Susan Clark. Klabunde testified on direct:

Q. What did you see?

A. I saw him walk in and he was carrying the bag from the purchase earlier. He was wearing sunglasses. He was smoking and wearing a hat, the same dress as he had on before, and he walked to the counter as I walked to the back.

Q. Smoking?

A. Yes.

Q. Had he been smoking before?

A. No.

Officer Clark testified on direct:

Q. Did you have any other duties in regards to this particular incident?

A. No. The follow-up duties would then come from the detectives in the bureau. Well, I take that back. Any evidence

that we see at the scene is my duty to place in property. I did take the pair of shorts that were left at the scene. I did take the pair of shorts and they were placed in property. And the suspect, when he originally went to the store, was smoking a cigarette and we believed what we found to be his cigarette butt laying [sic] on the floor because it was getting close to closing time and the girls were starting to clean up a little bit and they definitely said the cigarette butt was not there before he came in. So I did take the cigarette butt and place that into property also to be used as evidence.

On cross-examination, Officer Clark further testified:

Q. What was the purpose of gathering the cigarette butt and taking it to the station?

A. Usually a suspect will smoke the same brand of cigarettes and it doesn't usually deviate from that type of brand that he smokes. We use that — I took the cigarette butt in an attempt to find out what brand of cigarette this was. And also, it helps our case more if we arrest a suspect that would smoke the same brand of cigarettes that was found at the scene of the crime.

### III. ASSIGNMENTS OF ERROR

Poe asserts, rephrased and renumbered, that the district court erred in (1) finding there was no evidence in the record relating the cigarette butt to Poe, (2) denying Poe's request for DNA testing, (3) refusing to appoint counsel to assist Poe in presenting his motion for DNA testing to the district court, and (4) denying Poe's motion for new trial.

### IV. STANDARD OF REVIEW

▮ This is the court's first opportunity to consider the DNA Testing Act (hereinafter the Act). As such, we must determine the standard of review to be applied to factual findings made by the court in applying the provisions of the Act. Given that the Act applies to criminal defendants and that questions regarding its application are to be determined by a court "[u]pon consideration of affidavits or after a hearing," § 29-4120(5), it has similarities to a criminal proceeding tried to a court. We shall therefore apply a clearly erroneous standard of review to factual determinations

made during such proceedings. *State v. Keup*, 265 Neb. 96, 655 N.W.2d 25 (2003) (stating clearly erroneous standard for factual findings in criminal bench trial).

## V. ARGUMENT

### 1. APPLICABILITY OF ACT

#### (a) Relation of Cigarette Butt to Investigation or Prosecution

In his first assignment of error, Poe challenges the district court's finding that other than in "a larger sense," there was no evidence in the record relating the perpetrator of the robbery to the cigarette butt found at the scene. Such finding is critical given that § 29-4120(1)(a) requires any biological material subject to the provisions of the Act to be "related to the investigation or prosecution that resulted in such judgment."

Although the district court's order references testimony indicating the perpetrator was smoking a cigarette at the time of the robbery, Poe argues that the district court erred in finding that the record contained no specific evidence relating Poe to this cigarette. In support of this argument, Poe directs us to the following testimony from Officer Clark:

> And the suspect, when he originally went to the store, was smoking a cigarette and *we believed what we found to be his cigarette butt laying* [sic] *on the floor because it was getting close to closing time and the girls were starting to clean up a little bit and they definitely said the cigarette butt was not there before he came in.* So I did take the cigarette butt and place that into property also to be used as evidence.

(Emphasis supplied.)

We agree. As a threshold, § 29-4120(1)(a) requires that the biological material be "related to the investigation or prosecution." Officer Clark's testimony clearly relates the cigarette butt found on the floor to the cigarette being smoked by the perpetrator of the robbery. The district court's finding that the record contained no evidence relating the perpetrator of the robbery to the cigarette butt was clearly erroneous. Such determination, however, does not end our inquiry.

(b) Will Testing of Cigarette Butt Produce Noncumulative,
Exculpatory Evidence Relevant to Poe's Claim That
He Was Wrongfully Convicted or Sentenced?

Section 29-4120(1) states that forensic DNA testing is available for any biological material that

> (a) Is related to the investigation or prosecution that resulted in such judgment;
>
> (b) Is in the actual or constructive possession or control of the state or is in the possession or control of others under circumstances likely to safeguard the integrity of the biological material's original physical composition; and
>
> (c) Was not previously subjected to DNA testing or can be subjected to retesting with more current DNA techniques that provide a reasonable likelihood of more accurate and probative results.

Once it is established that the above thresholds have been met, a court is required to order testing only upon a further determination that

> such testing was effectively not available at the time of trial, that the biological material has been retained under circumstances likely to safeguard the integrity of its original physical composition, and that such testing may produce noncumulative, exculpatory evidence relevant to the claim that the person was wrongfully convicted or sentenced.

§ 29-4120(5).

In its order, the district court found that "no [DNA] testing was done" at the time of Poe's 1990 conviction and that "DNA testing was not effectively available at the time of [the] conviction." The district court further found that the biological material "has been secured" and that the "County Attorney has filed an inventory of the evidence that was secured in this case." The State has not challenged these findings on appeal. As a result, the unresolved question is whether the "testing may produce noncumulative, exculpatory evidence relevant to the claim that the person was wrongfully convicted or sentenced."

The district court's order concluding that the testing requested by Poe could not produce noncumulative, exculpatory evidence relevant to Poe's claim was premised upon the district court's erroneous finding that there was no evidence in the

record relating the cigarette butt to Poe. Having previously concluded that such finding was error, we need not determine whether such testing may ultimately produce noncumulative, exculpatory evidence relevant to Poe's claim. Poe states in his brief, and we agree, that the district court "did not engage in any analysis of why DNA testing would not be relevant to [his] claim." Brief for appellant at 14. Further, "the district court should have examined whether or not this evidence was 'material to the issue of guilt of the person in custody.'" Brief for appellant at 19. See § 29-4119 (defining exculpatory evidence as evidence "favorable to the person in custody and material to the issue of the guilt of the person in custody").

■ Furthermore, our review of the district court's order shows that it contains no determination of whether DNA testing of the cigarette butt "may produce noncumulative . . . evidence relevant to [Poe's] claim that [he] was wrongfully convicted." See § 29-4120(5). In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *Capitol City Telephone v. Nebraska Dept. of Rev.*, 264 Neb. 515, 650 N.W.2d 467 (2002). We therefore remand the cause to the district court for an initial determination, consistent with this opinion, of whether the DNA testing requested by Poe may produce noncumulative, exculpatory evidence relevant to Poe's claim that he was wrongfully convicted.

## 2. APPOINTMENT OF COUNSEL

Poe also assigns as error the district court's failure to appoint counsel for Poe in the district court pursuant to § 29-4122. Poe contends the record before the district court in support of his request for DNA testing shows that the testing may be relevant to his claim of wrongful conviction. Having previously concluded that the district court failed to determine whether the requested DNA testing would be relevant, we further remand this cause to the district court to determine whether, consistent with this opinion, "a showing [has been made by Poe] that DNA testing may be relevant to [Poe's] claim of wrongful conviction," sufficient to require the appointment of counsel. See *id.*

## VI. CONCLUSION

The district court erred in finding that the cigarette butt was not related to the investigation or prosecution that resulted in Poe's conviction. As such, the cause is remanded to the district court for further consideration, in light of our decision in this case, to determine the questions of whether Poe is entitled to forensic DNA testing of the cigarette butt, as well as appointment of counsel in the district court. Having reached such determination, we find it unnecessary to consider Poe's remaining assignment of error.

REVERSED AND REMANDED WITH DIRECTIONS.

McCORMACK, J., not participating.