STATE OF NEBRASKA, APPELLEE, V. STANLEY POE,
ALSO KNOWN AS STANLEY A. POE, APPELLANT.

717 N.W.2d 463

Filed June 23, 2006.    No. S-05-235.

Stanley Poe, pro se.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
Subsequent to our remand in *State v. Poe*, 266 Neb. 437, 665 N.W.2d 654 (2003), the district court for Douglas County appointed counsel and granted Stanley Poe's request for DNA testing of a cigarette butt found at the scene of the robbery for which Poe was convicted. A report on the DNA test results concluded that Poe could not be excluded as the contributor to biological material found on the cigarette butt, and Poe's counsel withdrew. Thereafter, the court held a hearing and entered an order finding that the results were not exculpatory and dismissing Poe's action brought under the DNA Testing Act, Neb. Rev. Stat. §§ 29-4116 through 29-4125 (Supp. 2001). Poe appeals from this order. We affirm.

## STATEMENT OF FACTS

In 1990, Poe was convicted of robbery. He was found to be a habitual criminal and was sentenced to 15 to 30 years' imprisonment. Poe's conviction was affirmed by the Nebraska Court of Appeals. *State v. Poe*, 1 NCA 379 (1992).

On October 11, 2001, Poe filed a pro se motion for DNA testing pursuant to the DNA Testing Act. Poe requested DNA testing of a cigarette butt found at the scene of the robbery for which he was convicted. The district court denied the motion. Poe appealed to this court. After concluding that the district court had erred when it determined that the cigarette butt was not related to the investigation or prosecution that resulted in Poe's conviction, we remanded the cause to the district court to determine whether Poe was entitled to forensic DNA testing of the cigarette butt and whether Poe was entitled to appointment of counsel. *State v. Poe*, 266 Neb. 437, 665 N.W.2d 654 (2003).

On remand, the court appointed counsel to represent Poe. On January 27, 2004, the court entered an order requiring that the cigarette butt be submitted to Orchid Cellmark Dallas (Cellmark) for mitochondrial DNA testing. The court further ordered that if Cellmark was able to generate a DNA profile, then a DNA sample from Poe would be taken and forwarded to Cellmark for comparison. After testing the cigarette butt and Poe's sample, Cellmark issued a report dated July 19, 2004, which concluded, in part, "Based on these results, Stanley Poe . . . cannot be excluded as being the contributor of the male biological material on the cigarette butt."

The court held a hearing in this matter on February 2, 2005, at which hearing it stated that the proceeding was "a final hearing on [Poe's] application having to do with . . . relief" under the DNA Testing Act. The State's attorney stated:

> The tests have come back inconclusive and [Poe's counsel] has withdrawn saying there was nothing else further to do in this matter. State is just asking for a final order at this time dismissing this matter saying that the DNA testing was granted, it was allowed, and did come back inconclusive, meaning there is nothing further to do in this matter.

Cellmark's July 19, 2004, report was admitted into evidence.

Poe appeared pro se and participated in the February 2, 2005, hearing by telephone. Poe stated that his counsel had notified him "in July" that counsel "wanted to withdraw from the case because the case was over." Poe further stated that he found out the case was "not over" when he was informed of the hearing. Poe noted his concern that he was not qualified to represent himself in the matter but, in any event, wished to have the record reflect that he objected to the State's characterization of the report. The court thereafter stated that "[g]iven the circumstances," it would not appoint counsel to represent Poe.

The court on February 3, 2005, entered an order denying "Poe's Application." The court stated that the DNA test results were "inclusive [sic]" and that, for purposes of the DNA Testing Act, the test results were not exculpatory as defined under § 29-4119 and were not favorable to Poe. Poe appeals.

## ASSIGNMENTS OF ERROR

Poe asserts that the court erred in (1) finding that the DNA test results were not exculpatory and not favorable tò Poe and in therefore dismissing the action, (2) allowing court-appointed counsel to withdraw prior to the final hearing in this matter, and (3) failing to follow this court's mandate in *State v. Poe*, 266 Neb. 437, 665 N.W.2d 654 (2003).

## STANDARDS OF REVIEW

Although the court in its order stated it was denying "Poe's Application," we treat the present appeal as involving a motion to dismiss an action under the DNA Testing Act after testing has been completed. In cases involving a request for postconviction DNA testing, we have stated that a motion for DNA testing is addressed to the discretion of the trial court and that unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Dean*, 270 Neb. 972, 708 N.W.2d 640 (2006). We have also stated that a motion for new trial based on newly discovered exculpatory evidence obtained pursuant to the DNA Testing Act is addressed to the discretion of the trial court and that unless an abuse of discretion is shown, the court's determination will not be disturbed. *State v. El-Tabech*, 269 Neb. 810, 696 N.W.2d 445 (2005). We similarly now hold that a motion to

dismiss an action under the DNA Testing Act after testing has been completed is addressed to the discretion of the trial court and that unless an abuse of discretion is shown, the court's determination will not be disturbed.

■ In an appeal from a proceeding under the DNA Testing Act, the trial court's findings of fact will be upheld unless such findings are clearly erroneous. *State v. Dean, supra.*

■ We review decisions regarding appointment of counsel under the DNA Testing Act for an abuse of discretion. *State v. Dean*, 270 Neb. at 977, 708 N.W.2d at 645 ("district court . . . did not abuse its discretion in denying . . . request for appointment of counsel").

## ANALYSIS
*State Should Move to Dismiss When DNA Test Results Do Not Exonerate or Are Not Exculpatory.*

Before reaching Poe's assignments of error, it is necessary to address an apparent uncertainty regarding the manner in which this case was to be concluded after the DNA test results were received and determined not to be exculpatory or exonerating. We note that § 29-4123 of the DNA Testing Act provides:

(2) Upon receipt of the results of such [DNA] testing, any party may request a hearing before the court when such results exonerate or exculpate the person. Following such hearing, the court may, on its own motion or upon the motion of any party, vacate and set aside the judgment and release the person from custody based upon final testing results exonerating or exculpating the person.

(3) If the court does not grant the relief contained in subsection (2) of this section, any party may file a motion for a new trial under sections 29-2101 to 29-2103.

Section 29-4123(2), which authorizes a motion to vacate and set aside the judgment, provides clear guidance regarding how parties should proceed when they believe that DNA test results exonerate or exculpate the person. Furthermore, § 29-4123(3) authorizes a motion for new trial if the court does not grant the relief contained in § 29-4123(2). We have held that denial of a motion to vacate the judgment under § 29-4123(2) and denial of a motion for new trial triggered by § 29-4123(3) are appealable orders. *State v. Bronson*, 267 Neb. 103, 672 N.W.2d 244 (2003).

Unlike the provisions setting forth the procedures relative to DNA results which exonerate or exculpate the person, the DNA Testing Act does not explicitly set forth the manner in which parties are to proceed when they determine that DNA test results do not exonerate or exculpate the person. After the test results in this case were received, Poe's attorney apparently determined that the results did not exonerate or exculpate Poe, and Poe's attorney chose to withdraw from representation without taking further steps to bring the action to a conclusion.

We are aware that parties and courts would have an interest in bringing a conclusion to actions under the DNA Testing Act and that because the DNA Testing Act does not specify the manner in which parties are to proceed when DNA test results do not exonerate or exculpate the person who sought testing, guidance is needed. We note that § 29-4123(1) provides that final DNA testing results are to be "disclosed to the county attorney, to the person filing the motion, and to the person's attorney." Test results are therefore available to the person bringing an action under the DNA Testing Act, that person's counsel, and to the State, represented by the county attorney. We recognize that the person bringing an action under the DNA Testing Act might be reluctant to ask the court to find that the results do not exonerate that individual or are not exculpatory. However, having received the results under § 29-4123(1), the State is in a position to determine that results do not exonerate and are not exculpatory. Therefore, in order to bring an action under the DNA Testing Act to a conclusion, we suggest that when the State receives DNA testing results that do not exonerate or exculpate the person, the State file a motion to dismiss the action. A motion in the nature of a motion to dismiss was made by the State, and the order of dismissal which was entered in this case is an appealable order.

*District Court Did Not Err in Finding That Results Were Not Exculpatory.*

Poe first asserts that the district court erred in finding that the DNA test results were not exculpatory to him and in therefore dismissing the action. The court stated in its order entered February 3, 2005, "For purposes of the Nebraska DNA Testing Act, the forensic test results are not exculpatory, as defined under Neb.Rev.Stat. §29-4119. The test results are not favorable to

Stanley Poe." We conclude that the district court was not clearly erroneous in so finding, see *State v. Dean*, 270 Neb. 972, 708 N.W.2d 640 (2006), and that it did not abuse its discretion in dismissing the action.

Poe sought, and was granted, DNA testing of a cigarette butt found at the scene of the robbery for which he was convicted. The cigarette butt was used in Poe's trial as evidence tying Poe to the scene of the robbery. A report prepared by Cellmark regarding the results of the DNA testing was entered into evidence at the February 2, 2005, hearing. The report concluded, in part, "Based on these results, Stanley Poe . . . cannot be excluded as being the contributor of the male biological material on the cigarette butt."

Section 29-4119 defines "exculpatory evidence" as "evidence which is favorable to the person in custody and material to the issue of the guilt of the person in custody." If the DNA test results had excluded Poe as being the contributor of DNA on the cigarette butt, such evidence might have been favorable to Poe in that it would have weakened the value of the cigarette butt as evidence tying Poe to the scene of the robbery. However, the Cellmark report concluded that Poe could not be excluded as the contributor, and the testing therefore was not favorable to Poe. We conclude that the district court was not clearly erroneous in finding that the test results were not exculpatory and were not favorable to Poe.

As noted above, the court stated that it was denying "Poe's Application." Because the court had granted Poe's request for DNA testing and because Poe had made no further request or application in this matter after the test results were received, we read the court's order as granting the State's motion, which motion we treat as a motion to dismiss rather than a ruling on an application made by Poe. Because the court was not clearly erroneous in finding that the test results were not exculpatory and were not favorable to Poe, we conclude that the court did not abuse its discretion in granting the State's motion to dismiss. We reject Poe's first assignment of error.

*Court Did Not Abuse Its Discretion by Allowing Counsel to Withdraw and by Declining to Appoint New Counsel.*

Poe next asserts that the district court erred in allowing counsel to withdraw prior to the final hearing in this action. Poe

suggests that new counsel should have been appointed at the February 2, 2005, hearing. We conclude that although it is the better practice to not allow counsel to withdraw prior to the conclusion of the DNA testing action, the court in this case did not abuse its discretion by permitting the withdrawal of counsel and deciding not to appoint new counsel.

According to the bill of exceptions, after receiving the DNA test results, Poe's attorney apparently determined that the results did not exonerate or exculpate Poe, and counsel sought and was permitted to withdraw from representation. The matter was not brought to a conclusion. Counsel's withdrawal was noted at the February 2, 2005, hearing. At the hearing, Poe stated that he did not think he was qualified to represent himself and the court stated that "[g]iven the circumstances," it would not appoint new counsel to represent Poe. We therefore consider Poe's assignment of error as including a claim that the court erred in refusing to appoint new counsel.

Poe asserts that in this DNA Testing Act proceeding, he was deprived of his right to counsel guaranteed by the Sixth Amendment to the U.S. Constitution. We reject this argument.

The U.S. Supreme Court has held that there is no federal constitutional right to an attorney during a postconviction collateral attack. *Pennsylvania v. Finley*, 481 U.S. 551, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987). We have so held. *State v. Stewart*, 242 Neb. 712, 496 N.W.2d 524 (1993) (noting that postconviction relief is not part of criminal proceeding itself, is considered civil in nature, and is collateral attack that normally occurs only after defendant has failed to secure relief through direct review of his conviction). An action under the DNA Testing Act is a collateral attack on a conviction and is therefore similar to a postconviction action and is not part of the criminal proceeding itself; therefore, there is not a constitutional right to appointment of counsel in an action under the DNA Testing Act. We note that courts in other jurisdictions have also held that there is no federal right to appointed counsel in DNA testing proceedings. *Trimble v. State*, 157 Md. App. 73, 849 A.2d 83 (2004); *Winters v. Presiding Judge*, 118 S.W.3d 773 (Tex. Crim. App. 2003); *Ard v. State*, 191 S.W.3d 342 (Tex. App. 2006).

The right to counsel in an action under the DNA Testing Act is limited to that provided in the act itself. We note that § 29-4122 of the DNA Testing Act provides in part:

Upon a showing by the person that DNA testing may be relevant to the person's claim of wrongful conviction, the court shall appoint counsel for an indigent person as follows:

(1) The court shall first contact the chief counsel for the Commission on Public Advocacy to inquire if the commission is able to accept the appointment. If the chief counsel determines that the commission can accept the appointment, then the court shall appoint the commission pursuant to the County Revenue Assistance Act; and

(2) If the chief counsel declines the appointment because of a conflict of interest or the case would exceed the caseload standards set by the commission, then the court shall appoint an attorney licensed to practice law in this state with at least five years experience in felony litigation to represent the indigent person at all stages of the proceedings.

As we read the record, it appears that on remand, the court in this case appointed counsel pursuant to § 29-4122(2).

Under § 29-4122, the court has discretion to appoint counsel based on its determination of whether the person bringing the action has shown that DNA testing may be relevant to his or her claim of wrongful conviction. The court in this case appointed counsel, which indicates that before the testing was granted and completed, the court determined that under § 29-4122, Poe had shown that DNA testing might be relevant to his claim of wrongful conviction. After the tests had been completed and counsel had withdrawn, the court stated that "[g]iven the circumstances," it would not appoint new counsel for the final hearing. The court apparently determined, based on its finding, which we affirm, that the test results were not exculpatory and not favorable to Poe and that Poe could no longer show that the testing was relevant to his claim of wrongful conviction. We conclude that in the instant case, the district court did not abuse its discretion in so finding and in therefore declining to appoint new counsel.

We note that when counsel is appointed pursuant to § 29-4122(2), counsel is to be appointed to represent the person

"at all stages of the proceedings." We therefore observe that it is the better practice in such cases that appointed counsel not be allowed to withdraw until the action has been brought to a conclusion either by granting of the relief requested or by dismissing the DNA testing action. However, because of the apparent uncertainty in this case as to how the parties and the court were to proceed when the unfavorable test results were received and because Poe was no longer able to show that testing was relevant to his claim of wrongful conviction, we conclude that the court did not abuse its discretion in declining to appoint new counsel for the final hearing in this case.

*District Court Did Not Fail to Follow Mandate.*

Finally, Poe claims that the court failed to follow this court's mandate in *State v. Poe*, 266 Neb. 437, 665 N.W.2d 654 (2003). Poe does not explain in what respect he believes the district court failed to follow the mandate, and our review of the proceedings on remand indicates no manner in which the court failed to do so. This court's instruction in *Poe* was that on remand, the district court was to determine whether Poe was entitled to forensic DNA testing of the cigarette butt and whether Poe was entitled to appointment of counsel. The court considered both issues, and it appointed counsel and ordered DNA testing. We therefore reject Poe's final assignment of error.

## CONCLUSION

We conclude that the district court did not err in finding that the DNA test results were not exculpatory and that it did not abuse its discretion in dismissing Poe's action under the DNA Testing Act. We further conclude that the court did not abuse its discretion by declining to appoint new counsel for the final hearing and that the court did not fail to follow this court's mandate. We affirm the order dismissing Poe's action under the DNA Testing Act.

AFFIRMED.

MCCORMACK, J., not participating.