STATE OF NEBRASKA, APPELLEE, V.
JOSEPH EDGAR WHITE, APPELLANT.

740 N.W.2d 801

Filed November 2, 2007.   No. S-06-919.

Douglas J. Stratton, of Stratton & Kube, P.C., for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Joseph Edgar White appeals the order of the district court for Jefferson County which denied White's motion for DNA testing filed under the DNA Testing Act, Neb. Rev. Stat. §§ 29-4116 through 29-4125 (Cum. Supp. 2006). The district

court determined that testing would not result in noncumulative, exculpatory evidence and denied DNA testing. We conclude that the district court erred in such determination, and we therefore reverse the denial and remand for further proceedings.

## STATEMENT OF FACTS

Following a jury trial, White was convicted of first degree felony murder in connection with the death of 68-year-old Helen Wilson. White was sentenced to life imprisonment. White's conviction and sentence were affirmed on appeal to this court. *State v. White*, 239 Neb. 554, 477 N.W.2d 24 (1991). The facts of the case were described in this court's opinion as follows:

> The record shows that on the night of February 5, 1985, White, James Dean, Thomas Winslow, Ada JoAnn Taylor, and Debra Shelden forcibly entered the victim's apartment in Beatrice[, Nebraska,] for the purpose of robbing her. A sixth accomplice, Kathy Gonzalez, entered the apartment during the course of the robbery. The record shows that White participated in at least four planning sessions concerning this incident. During those discussions, White proposed sexually assaulting Mrs. Wilson as well as robbing her.

> Most of the details of the Wilson homicide are set out in *State v. Dean*, 237 Neb. 65, 464 N.W.2d 782 (1991). Specifically, Mrs. Wilson was forced into her bedroom and was threatened and physically abused when she refused to tell the intruders where she kept her money. She was then forced back to the living room, screaming and kicking, and either tripped or was pushed to the floor. At this point, White and Winslow took turns sexually assaulting Mrs. Wilson. According to Taylor, White had vaginal intercourse with the victim, saying that she "deserved it," while Winslow held the victim's legs. Winslow then sodomized the victim while White held her down. Meanwhile, Taylor suffocated Mrs. Wilson with a pillow.

> Mrs. Wilson did not move after she was raped, and appeared to be either dead or near death. The intruders proceeded to search the apartment for money. Taylor went into the kitchen and made some coffee for White and

Winslow. Dean testified that after they left the apartment building, there was a general conversation between Taylor and White "about how nice it was to do it. They would do it again. It was fun. If they had the opportunity, they would do it again." White, Taylor, Winslow, and Dean then went to a truckstop and had breakfast.

When Mrs. Wilson's body was found the next morning by her brother-in-law, she had a complete fracture through the lower part of the left humerus, fractured ribs, a fractured sternum, a 2-centimeter vaginal tear, and numerous bruises, abrasions, and scratches. Her hands were loosely tied with a towel, and a scarf was tightly wrapped around her head and tied.

239 Neb. at 555-56, 477 N.W.2d at 24-25.

On October 26, 2005, White filed a motion for DNA testing under the DNA Testing Act. White sought DNA testing of "any biological material that is related to the investigation or prosecution" that had resulted in the judgment against him. A hearing on the motion was held April 7, 2006. On August 2, the district court entered an order denying White's motion.

In its order denying White's motion, the court noted various facts that it found relevant to its decision. In addition to the prosecution of White, the court noted that the State filed charges against James Dean, Thomas Winslow, Ada JoAnn Taylor, Debra Shelden, and Kathy Gonzalez in connection with Wilson's death. Dean, Taylor, and Shelden pled guilty to aiding and abetting second degree murder, and Gonzalez pled guilty to second degree murder. Dean, Taylor, Shelden, and Gonzalez all testified against White at his trial. Winslow did not testify against White, but Winslow pled no contest to aiding and abetting second degree murder. At White's trial, Dean, Taylor, and Shelden all testified that they saw White and Winslow sexually assault Wilson. Gonzalez testified that White was at the scene of the crime. A pathologist testified at trial that Wilson had suffered vaginal injuries and that her vagina and rectum had been penetrated. Samples of semen that were found "on the scene" were subjected to forensic testing, and one sample was found to be similar to Winslow's blood type, but no forensic testing indicated that any sample belonged to White. White

testified in his own defense and denied that he was present at Wilson's death.

In the August 2, 2006, order, the court first determined that DNA testing was effectively not available at the time of White's trial. The court did not determine but assumed for purposes of analysis that biological material had been retained under circumstances likely to safeguard the integrity of its original physical composition. Finally, the court determined that DNA testing would not result in noncumulative, exculpatory evidence relevant to any claim that White was wrongfully convicted or sentenced. The court therefore denied White's motion for DNA testing.

White appeals the denial of his motion for DNA testing.

## ASSIGNMENT OF ERROR

White asserts that the district court erred in denying his motion for DNA testing and particularly in finding that DNA testing would not result in noncumulative, exculpatory evidence.

## STANDARD OF REVIEW

■ A motion for DNA testing is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Phelps*, 273 Neb. 36, 727 N.W.2d 224 (2007).

## ANALYSIS

We recently set forth the procedure for obtaining DNA testing pursuant to the DNA Testing Act as follows:

A person in custody takes the first step toward obtaining possible relief under the DNA Testing Act by filing a motion requesting forensic DNA testing of biological material. See § 29-4120(1). Forensic DNA testing is available for any biological material that (1) is related to the investigation or prosecution that resulted in the judgment, (2) is in the actual or constructive possession of the State or others likely to safeguard the integrity of the biological material, and (3) either was not previously subjected to DNA testing or can be retested with more accurate current techniques. See *id*. After a motion seeking forensic DNA testing has been filed, the State is required

to file an inventory of all evidence that was secured by the State or a political subdivision in connection with the case. See § 29-4120(4).

If the threshold requirements of § 29-4120(1) have been met, then a court is required to order testing only upon a further determination that "such testing was effectively not available at the time of trial, that the biological material has been retained under circumstances likely to safeguard the integrity of its original physical composition, and that such testing may produce noncumulative, exculpatory evidence relevant to the claim that the person was wrongfully convicted or sentenced." § 29-4120(5).

*State v. Phelps,* 273 Neb. at 40, 727 N.W.2d at 227-28.

In its order in the present case, the district court implicitly found that the threshold requirements of § 29-4120(1) paraphrased above were met. The court then considered whether the three requirements listed in § 29-4120(5) and quoted above were met. It first found that DNA testing was not available at the time of White's trial. The State does not challenge this finding. Because the court would ultimately deny White's motion based on the third requirement, the court assumed for purposes of analysis of the second requirement that the biological material had been retained under circumstances likely to safeguard the integrity of its original physical composition. The court thereafter determined that DNA testing would not produce noncumulative, exculpatory evidence relevant to the claim that White was wrongfully convicted or sentenced, and the court therefore denied White's motion. The court's determination on the final requirement is challenged on appeal.

The district court characterized White's argument with regard to wrongful conviction and sentence as a claim by White that with the aid of DNA testing, he could establish that he was not present and did not participate in the crime. The court determined that even if DNA testing indicated that the biological samples did not belong to White, such evidence would not compel the conclusion that White was not present. The court further noted that White was not charged with sexually assaulting Wilson but with felony murder, which could have been proved based on White's participation in the felony robbery even if he

did not participate in a sexual assault. The court noted that even without biological evidence, there was other evidence, mainly witness testimony, that White was present at Wilson's death and that he participated in the sexual assault. Thus, even if DNA testing proved that the semen belonged to Winslow and not to White, such evidence would merely be an additional piece of evidence to be considered by a jury and would not preclude a jury from finding White guilty of first degree murder based on other evidence. In this respect, the court noted that White was convicted in the original trial despite testimony that biological evidence found at the scene could not be tied to him. The court therefore concluded that even if DNA testing were favorable to White, "the result would be at best inconclusive, and certainly not exculpatory," and that such DNA evidence "would be, at best, cumulative of the other biological evidence." Finally, the district court noted that the court that had sentenced White had "found that there was little appreciable difference in the degree of culpability between" White and his codefendants, and the district court in the present case therefore concluded that DNA evidence favorable to White would not have affected his sentence.

White argues on appeal that the district court's analysis was limited to a consideration of the possible results of DNA testing as being that the samples belonged to Winslow or to White or to both, with the most favorable result to White being that the samples belonged only to Winslow. White asserts that the district court failed to consider the possibility that DNA testing would exclude both White and Winslow as contributors to the samples. White argues that such result would be the most favorable to him because it would call into question the testimony of the State's witnesses against him and would be consistent with his defense that he was not present at the scene of the crime.

Three witnesses testified that *only* White and Winslow carried out the sexual assault of Wilson. If DNA testing excluded White and Winslow, then, White argues, the sample necessarily belongs to another person, possibly Dean or some other unidentified male. A result showing that neither White nor Winslow contributed to the sample would raise serious doubts as to the credibility of the witnesses who stated that only White and

Winslow carried out the sexual assault. Such evidence could be used by the defense to cross-examine the witnesses and undermine their testimony regarding the sexual assault and the murder which, White argues, would be "devastating" to the prosecution's case. Brief for appellant at 17.

The heart of the State's case was the testimony of White's codefendants, Dean, Taylor, and Shelden, who each testified that they saw only White and Winslow sexually assault Wilson. We agree with White that if DNA testing showed that the semen samples belonged to neither White nor Winslow, such evidence would raise questions regarding the identity of the person or persons who actually contributed to the sample and who presumably committed the assault. Such a favorable test result could cause jurors to question the credibility of Dean, Taylor, and Shelden. Evidence that contradicted such witnesses' testimony that White and Winslow carried out the sexual assault could cause jurors to question their testimony regarding other matters. Evidence that raised serious doubts regarding the credibility of these witnesses would be favorable to White and material to the issue of his guilt and, therefore, "exculpatory" as defined under the DNA Testing Act.

We determine that a DNA test result that excluded both White and Winslow as contributors to the semen samples would be exculpatory under the DNA Testing Act's unique definition of "exculpatory evidence." The DNA Testing Act defines "exculpatory evidence" as evidence "which is favorable to the person in custody and material to the issue of the guilt of the person in custody." § 29-4119. As noted above, DNA test results that excluded both White and Winslow could raise serious doubts regarding the testimony of the main witnesses against White. Although there was other evidence regarding White's presence at the crime scene and his involvement in planning the crime, the testimonies of Dean, Taylor, and Shelden were critical to the State's case against White resulting in White's conviction for first degree murder.

For the sake of completeness, we note that in addition to finding that DNA testing would not produce exculpatory evidence, the district court found that DNA evidence excluding White as a contributor would be cumulative to forensic

evidence presented at White's trial, which failed to indicate that the semen samples belonged to White. The State argues that White was convicted despite the lack of such forensic evidence and that DNA evidence excluding White would thus be cumulative of such evidence. However, we note that there is a difference between forensic evidence that fails to identify a person and DNA evidence that excludes the person. See *State v. Houser*, 241 Neb. 525, 490 N.W.2d 168 (1992) (noting probative value of DNA evidence). If DNA testing results specifically exclude White as a contributor, such evidence would not be merely cumulative of the forensic evidence, which simply failed to identify White.

Because DNA testing could result in evidence excluding both White and Winslow as contributors to the semen samples, we determine that DNA testing may produce noncumulative, exculpatory evidence relevant to the claim that White was wrongfully convicted or sentenced and that the district court erred when it failed to so determine. The district court therefore abused its discretion when it denied White's motion for DNA testing.

We note that in its order denying DNA testing, the district court, for purposes of analysis, assumed without deciding that biological material had been retained under circumstances likely to safeguard the integrity of its original physical composition. Because the court denied White's motion for DNA testing for other reasons, the court did not make a determination on the retention issue. In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *State v. Poe*, 266 Neb. 437, 665 N.W.2d 654 (2003). Without a determination of this issue, we cannot order the district court to order DNA testing. We therefore remand the cause to the district court with orders to determine whether biological material has been retained under circumstances likely to safeguard the integrity of its original physical composition. If the court so finds, it should order DNA testing of such material.

## CONCLUSION

We conclude that the district court erred in its determination that DNA testing would not produce noncumulative, exculpatory

evidence and that the court therefore abused its discretion when it denied White's motion for DNA testing. We reverse the denial and remand the cause to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.