(119 P.3d 679)
No. 92,570

STATE OF KANSAS, *Appellee*, v. ROGER M. SMITH, *Appellant*.

Opinion filed September 16,

*Janine Cox*, capital appellate defender, for appellant.

*Timothy L. Dupree*, assistant county attorney, *Marc Goodman*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before GREENE, P.J., HILL and BUSER, JJ.

GREENE, J.: Roger M. Smith appeals the district court's summary denial of his motion for DNA testing pursuant to K.S.A. 2004 Supp. 21-2512. Concluding that such testing could not produce exculpatory evidence, we affirm.

### Factual and Procedural Background

Smith pled guilty to one count of rape and one count of aggravated criminal sodomy in 1986. The record on appeal reflects that during his incarceration, he has written a host of letters to the district court and others, he has filed a plethora of postconviction motions, and his case has been before our appellate courts and

prompted memorandum opinions on at least five occasions. Before us in this appeal is Smith's "Petition Order for Forensic Testing and Appointment of Counsel," which seeks an order for DNA testing pursuant to K.S.A. 2004 Supp. 21-2512.

The district court denied Smith's motion, together with three other motions, in a memorandum decision relying upon *Mebane v. State*, 21 Kan. App. 2d 533, 902 P.2d 494 (1995), which predates the enactment of K.S.A. 2004 Supp. 21-2512 and case law construing the new statute. The district court recited a colloquy between the court and Smith regarding his waiver of rights and his confirmation of voluntariness at the plea hearing and concluded that Smith's motion should be denied because he pled guilty. The court reasoned:

"The defendant's argument for post-conviction DNA testing ignores the fact that testing has only been allowed where the conviction followed a trial. Here, the defendant, after having had both charges read to him by the court, admitted his guilt and waived his right to offer exculpatory evidence.

"There is no person in any better position to know of the extent of his involvement in these crimes than the defendant himself. Had the defendant believed he was innocent, he could have proceeded to trial or at the least entered a plea of no contest. The defendant, however, pleaded guilty. To allow re-testing solely to satisfy a fishing expedition as is sought here would amount to a mockery of the solemn nature of a plea hearing. Further, defendant's contention now that post-conviction testing might lead to exculpatory evidence, is simply evidence that he lied when he admitted his complicity in the crimes. Under these circumstances the defendant's request for DNA testing should be denied."

Smith appeals.

### *Did the District Court Err in Denying Smith's Motion for DNA Testing?*

We view Smith's argument as framing a question of statutory interpretation, a question of law over which our review is unlimited. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

K.S.A. 2004 Supp. 21-2512 provides in material part:

"(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction for murder as defined by K.S.A. 21-3401, and amendments thereto, or for rape as defined by K.S.A. 21-3502, and amendments thereto, may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

(1) Is related to the investigation or prosecution that resulted in the conviction;

(2) is in the actual or constructive possession of the state; and

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

. . . .

"(c) The court shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced."

Our Supreme Court had recent occasion to interpret and apply this statute in *State v. Denney*, 278 Kan. 643, 101 P.3d 1257 (2004), and *Bruner v. State*, 277 Kan. 603, 605, 88 P.3d 214 (2004). In *Denney*, the court held that the statutory goal is to use DNA testing to help determine if one who is in state custody "was wrongfully convicted or sentenced" and if so, to vacate and set aside the judgment, discharge the person if in custody, resentence, or grant a new trial. 278 Kan. at 654. In *Bruner*, the court held that (1) it is inappropriate to apply the exceptional circumstances condition to such a request, even if it is presented in a successive postconviction motion; (2) relief under the statute may not be limited to situations where the evidence against the defendant was not overwhelming; (3) the statute does not require specific allegations by the defendant regarding what noncumulative exculpatory evidence would be produced by such testing; (4) a request under this statute should be determined on a case-by-case basis; and (5) to the extent the statute may permit a fishing expedition, it is an expedition that our legislature has concluded is worth conducting. 277 Kan. at 605-06.

We must first address the apparent conclusion of the district court that DNA testing pursuant to the statute is not warranted where the defendant has pled guilty to the offenses. The statute itself fails to restrict its ambit based upon the plea entered by the defendant; in fact, the statute expressly applies to "a person in state custody, at any time after conviction for murder . . . or for rape . . . ." K.S.A. 2004 Supp. 21-2512. The legislature is perfectly capable of limiting such postconviction relief to those who pled not guilty or no contest to the material charges, and no such limitation appears in the text of the statute. Moreover, our statutory

scheme and related case law has long recognized that a plea of guilty is subject to being set aside. K.S.A. 2004 Supp. 22-3210(d); see, *e.g.*, *State v. Williams*, 275 Kan. 284, 64 P.3d 353 (2003). Because such a plea is not necessarily irrevocable, it would be inconsistent with the broad legislative goal if DNA testing was unavailable solely because a guilty plea was entered. Accordingly, we disapprove this aspect of the district court's analysis.

We next address whether Smith's petition was adequate under the statute as construed by the court in *Bruner*. Smith alleged that he sought an order for

" '**forensic DNA testing (deoxyribonucleic acid testing)**' of any biological material that

a.) Is related to the investigation or prosecution that resulted in [his] conviction . . . .

b.) Is in the actual or constructive possession of the State, and:

c.) Was not previously subjected to **DNA testing**;

d.) Can be subjected to retesting with new **DNA** techniques that provide a reasonable likelihood of more accurate and probative results."

These allegations appear to meet the threshold requirements of the statute, although we note that in *Bruner* the defendant claimed that a police report noted collection of certain biological evidence, whereas Smith made no such claim and was apparently unaware whether such evidence existed.

Because a criminal defendant—especially one whose case is resolved by a guilty plea—may remain unaware of the extent, if any, that biological evidence has been collected and may be available for testing, we conclude that specific allegations regarding the nature and existence of such material need not be made. Neither the statute nor the court in *Bruner* require such specificity, and the district court erred in its apparent reliance on the fact that Smith "does not identify what 'biologic' material he seeks to have tested, or even demonstrate that there is any material available to test." Moreover, the district court's conclusion that the absence of such allegations rendered Smith's motion "purely a fishing expedition by the defendant" proved an unfortunate choice of phrase, given the subsequent Supreme Court endorsement of the statute's apparent scope as permitting precisely such an expedition.

The more fundamental issue is whether the district court was required to appoint counsel and conduct an evidentiary hearing given the allegations of Smith's petition. We conclude that there is no such requirement where files and records available to the district court demonstrate conclusively that such testing could not lead to exculpatory evidence. The statute requires no evidentiary hearing in *every* case, but rather requires a "determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced." K.S.A. 2004 Supp. 21-2512(c). We are mindful that the court in *Bruner* held that appointment of counsel and evidentiary hearing were required *in that instance*, but this was based upon the court's conclusion that there was "no reason to believe that testing of available biological evidence might not produce noncumulative, exculpatory evidence." 277 Kan. at 606. In Smith's case, however, there was indeed reason to believe that testing *could not* produce exculpatory evidence.

Here, the files and records available to the district court were more than sufficient to determine that testing could not produce exculpatory evidence. First, in his personal handwritten letter to the court in support of his original motion to vacate sentence, Smith did not claim his innocence, but rather claimed that no harm was inflicted on the victim, no weapons were used, and "alcohol controlled [his] mind." Second, in a later pro se motion to withdraw plea, Smith did not claim that he did not commit the sexual activities, but rather claimed that "he had [not] done anything more than enter into a consenting sexual encounter which was in the most part induced by the alleged victim." Third, in his presentence investigation interview, Smith did not deny extensive sexual activities with the victim, but rather claimed that the victim encouraged the activity. Fourth, in a veritable host of postconviction letters and motions, Smith does not once deny being the perpetrator of the sexual activity from which the charges arose.

DNA testing is intended to confirm or dispute the identity of individuals involved in or at the scene of a purported crime. Here, the fact that Smith engaged in intercourse and oral sodomy with the victim in this case *has never been in dispute*. We fail to com-

prehend any possibility that DNA testing could assist in supporting a defense of consensual conduct or otherwise exculpate Smith. Accordingly, the district court did not err in its determination that testing should be denied.

Finally, Smith argues that the district court's failure to follow the letter of all statutory procedures requires that we remand for further proceedings. We recognize that the district court failed to observe the requirements of K.S.A. 2004 Supp. 21-2512(b)(1), which mandates notification to the prosecuting attorney and an opportunity for the prosecutor to respond. Clearly, the better practice is for all requirements within the statute to be faithfully observed by the district court upon the filing of a petition under this statute. Given the court's determination that no testing was warranted, however, we fail to see any prejudice to Smith as a result of any failure of notification and response by the State.

To the extent that the district court's memorandum decision relied upon case law and an analysis that proved inconsistent in part with subsequent case law, including *Bruner*, it cannot be approved. The ultimate judgment of the court, however, that Smith was not entitled to DNA testing, was correct. We uphold that judgment even though the district court may have erred in its reasoning. See *State v. Graham*, 277 Kan. 121, 133, 83 P.3d 143 (2004).

Affirmed.