STATE OF NEBRASKA, APPELLEE, V.
THOMAS W. WINSLOW, APPELLANT.
740 N.W.2d 794

Filed November 2, 2007.   No. S-06-983.

James R. Mowbray and Jerry L. Soucie, of Nebraska Commission on Public Advocacy, for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

NATURE OF CASE

Thomas W. Winslow appeals the order of the district court for Gage County which denied Winslow's motion for DNA testing filed under the DNA Testing Act, Neb. Rev. Stat. §§ 29-4116 through 29-4125 (Cum. Supp. 2006). The district

court determined that Winslow was not eligible for DNA testing because he was convicted based on his plea of no contest. As an alternate ground for denying the motion, the district court determined that DNA testing would not result in noncumulative, exculpatory evidence. We conclude that the district court erred in both determinations, and we therefore reverse, and remand for further proceedings.

## STATEMENT OF FACTS

On April 24, 1989, Winslow was charged with first degree murder in connection with the death of 68-year-old Helen Wilson. After a codefendant, Joseph Edgar White, was convicted by a jury of first degree murder, Winslow reached a plea agreement with the State, and on December 8, 1989, Winslow pled no contest to a reduced charge of aiding and abetting second degree murder. As a factual basis in support of Winslow's plea, the State relied on the evidence and testimony of witnesses presented at White's trial. The trial court accepted Winslow's plea, and Winslow was sentenced to imprisonment for 50 years. Winslow's sentence was summarily affirmed by this court. *State v. Winslow*, 236 Neb. xxvii (No. S-90-193, Jan. 4, 1991).

The facts of the underlying crime were described in this court's opinion in codefendant White's appeal as follows:

The record shows that on the night of February 5, 1985, White, James Dean, Thomas Winslow, Ada JoAnn Taylor, and Debra Shelden forcibly entered the victim's apartment in Beatrice[, Nebraska,] for the purpose of robbing her. A sixth accomplice, Kathy Gonzalez, entered the apartment during the course of the robbery. The record shows that White participated in at least four planning sessions concerning this incident. During those discussions, White proposed sexually assaulting Mrs. Wilson as well as robbing her.

Most of the details of the Wilson homicide are set out in *State v. Dean*, 237 Neb. 65, 464 N.W.2d 782 (1991). Specifically, Mrs. Wilson was forced into her bedroom and was threatened and physically abused when she refused to tell the intruders where she kept her money. She was

then forced back to the living room, screaming and kicking, and either tripped or was pushed to the floor. At this point, White and Winslow took turns sexually assaulting Mrs. Wilson. According to Taylor, White had vaginal intercourse with the victim, saying that she "deserved it," while Winslow held the victim's legs. Winslow then sodomized the victim while White held her down. Meanwhile, Taylor suffocated Mrs. Wilson with a pillow.

Mrs. Wilson did not move after she was raped, and appeared to be either dead or near death. The intruders proceeded to search the apartment for money. Taylor went into the kitchen and made some coffee for White and Winslow. Dean testified that after they left the apartment building, there was a general conversation between Taylor and White "about how nice it was to do it. They would do it again. It was fun. If they had the opportunity, they would do it again." White, Taylor, Winslow, and Dean then went to a truckstop and had breakfast.

When Mrs. Wilson's body was found the next morning by her brother-in-law, she had a complete fracture through the lower part of the left humerus, fractured ribs, a fractured sternum, a 2-centimeter vaginal tear, and numerous bruises, abrasions, and scratches. Her hands were loosely tied with a towel, and a scarf was tightly wrapped around her head and tied.

*State v. White*, 239 Neb. 554, 555-56, 477 N.W.2d 24, 24-25 (1991).

On February 22, 2006, Winslow filed a motion for DNA testing under the DNA Testing Act. Winslow sought DNA testing of "any biological material that is related to the investigation or prosecution" that resulted in the judgment against him. Hearings on the motion were held April 7 and 18. On August 29, the district court entered an order denying Winslow's motion.

In the order, the court noted various facts related to Winslow's case that it found relevant to its decision. In addition to the prosecutions of Winslow and White, the court noted that the State filed charges against James Dean, Ada JoAnn Taylor, Debra Shelden, and Kathy Gonzalez in connection with Wilson's death. Dean, Taylor, and Shelden pled guilty to aiding and abetting

second degree murder, and Gonzalez pled guilty to second degree murder. Dean, Taylor, Shelden, and Gonzalez all testified against White at his trial. Winslow did not testify against White. At White's trial, Dean, Taylor, and Shelden all testified that they saw White and Winslow, and only White and Winslow, sexually assault Wilson. Gonzalez testified that White was at the scene of the crime. A pathologist testified at White's trial that Wilson had suffered vaginal injuries and that her vagina and rectum had been penetrated. Samples of semen that were found "on the scene" were subjected to forensic testing, and one sample was found to be similar to Winslow's blood type, but no forensic testing indicated that any sample belonged to White.

In its August 29, 2006, order, the district court first addressed the State's argument that Winslow waived his right to DNA testing because he pled no contest rather than being convicted after a trial. The court noted that ordinarily, the voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. Based on this principle, the court concluded that Winslow had waived his right to DNA testing because of his plea of no contest.

In the event it was incorrect in its conclusion that Winslow waived his right to DNA testing, the district court considered Winslow's motion on its merits. The court first determined that DNA testing was effectively not available at the time of Winslow's prosecution. The court did not determine but assumed for purposes of analysis that biological material had been retained under circumstances likely to safeguard the integrity of its original physical composition. Finally, the court determined that DNA testing would not result in noncumulative, exculpatory evidence relevant to any claim that Winslow was wrongfully convicted or sentenced.

Regarding wrongful conviction, the court characterized Winslow's objective of testing as a claim by Winslow that with the aid of DNA testing, he could establish that he was not present and, therefore, did not participate in the crime of which he stood convicted. The court determined that even if DNA testing indicated that the biological samples did not belong to Winslow, such evidence would not compel a conclusion that

Winslow was not present or did not aid and abet the murder. The court noted that even without biological evidence, there was other evidence, mainly witness testimony from White's trial, that Winslow was present at Wilson's death and that he participated in the sexual assault and robbery. Thus, even if DNA testing proved that the semen belonged to White and not to Winslow, such evidence would merely be an additional piece of evidence to be considered by a jury and would not preclude a jury from finding Winslow guilty of aiding and abetting second degree murder based on other evidence. The court therefore concluded that even if DNA testing were favorable to Winslow, "the result would be at best inconclusive, and certainly not exculpatory." Because the court found that DNA testing would not result in noncumulative, exculpatory evidence, the court denied Winslow's motion for DNA testing. Finally, the district court noted that the court that had sentenced Winslow relied on Winslow's significant prior criminal record, his psychiatric records, the plea agreement, and Winslow's failure to testify against White in setting Winslow's sentence. The court in the present case therefore concluded that DNA evidence favorable to Winslow would not have changed his sentence.

Winslow appeals the denial of his motion for DNA testing.

## ASSIGNMENTS OF ERROR

Winslow asserts that the district court erred in denying his motion for DNA testing and particularly in (1) concluding that his entry of a plea of no contest waived his right to DNA testing and (2) finding that DNA testing would not result in noncumulative, exculpatory evidence.

## STANDARDS OF REVIEW

■ The interpretation of a statute is a question of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Neiman v. Tri R Angus, ante* p. 252, 739 N.W.2d 182 (2007).

■ A motion for DNA testing is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Phelps*, 273 Neb. 36, 727 N.W.2d 224 (2007).

## ANALYSIS

*DNA Testing Act Allows Testing in Connection
With Plea-Based Convictions.*

The district court denied Winslow's motion for DNA testing on the basis that Winslow waived his right to DNA testing because he pled no contest rather than being convicted after a trial. Contrary to the district court's reasoning, we conclude as a matter of law that under the DNA Testing Act, a defendant who was convicted based on a plea is eligible for testing, and that a defendant does not waive such rights if his or her conviction was based on a plea.

The district court reasoned that a defendant who pleads waives relief under the DNA Testing Act because normally a plea waives all defenses to a criminal charge and, therefore, the defendant has already waived any defense that may be supported by DNA testing results. Initially, we note that the entry of a plea does not invariably waive all forms of relief pertaining to a plea-based conviction. Thus, for example, we have stated that a court will consider an allegation that the plea and associated conviction were the result of ineffective assistance of counsel brought under the postconviction act, Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 1995). *State v. Barnes*, 272 Neb. 749, 724 N.W.2d 807 (2006). Further, the court's analysis did not focus on the specific language pertaining to the relief available under the DNA Testing Act, which we believe controls our analysis. The district court's reasoning ignores the fact that under the DNA Testing Act, a court is required to order DNA testing if, among other requirements, the court determines that such testing may produce evidence "relevant to the claim that the person was wrongfully convicted *or sentenced.*" § 29-4120(5) (emphasis supplied). With respect to the impact the results of DNA testing might have on a sentence, we note that we customarily consider challenges to sentences in plea-based convictions. See *State v. Burkhardt*, 258 Neb. 1050, 607 N.W.2d 512 (2000) (guilty plea waived right to challenge factual basis for conviction, but this court considered challenge to sentence). Because DNA testing results may be used to support a claim that the person was wrongfully sentenced, it does not follow that a person who was convicted

based on a plea has waived his or her rights to relief under the DNA Testing Act.

More importantly, contrary to the reasoning of the district court, the language of the DNA Testing Act does not limit the scope of its relief to persons convicted following a trial. In this regard, we note that § 29-4120(1) of the DNA Testing Act provides, "Notwithstanding any other provision of law, a person in custody pursuant to the judgment of a court may, at any time after conviction, file a motion, with or without supporting affidavits, in the court that entered the judgment requesting forensic DNA testing . . . ." The language of the DNA Testing Act affords relief to persons "in custody pursuant to the judgment of a court," and such persons may include those in custody pursuant to either a conviction following trial or a plea-based conviction.

The language of Nebraska's DNA Testing Act may be contrasted to the language of DNA testing statutes in other states where courts have determined, based on the specific language of their relevant DNA testing statutes, that relief pursuant to such statutes is limited to defendants who were found guilty following trial and testing is not available to defendants convicted pursuant to a plea. In *People v. Byrdsong*, 33 A.D.3d 175, 180, 820 N.Y.S.2d 296, 299 (2006), the court noted that New York's statute referred a number of times to "'trial resulting in the judgment.'" Based on such language, the court concluded that "the New York State statute explicitly requires conviction by verdict and judgment after trial" and that therefore, a defendant who pled guilty was not entitled to relief under the New York statute. *Id.* See, also, *Stewart v. State*, 840 So. 2d 438 (Fla. App. 2003) (stating that Florida DNA testing statute referring to defendant who "'has been *tried* and found guilty'" excludes defendant who pled guilty or nolo contendere) (abrogated by amendment of statute as recognized in *Lindsey v. State*, 936 So. 2d 1213 (Fla. App. 2006)); *People v. Lamming*, 358 Ill. App. 3d 1153, 1155, 833 N.E.2d 925, 927, 295 Ill. Dec. 719, 721 (2005) (stating that Illinois DNA testing statute requiring that "identity was at issue at his trial" excludes defendant who pled guilty). We recognize that Nebraska's DNA Testing Act contains a reference to

"trial" in that an order for DNA testing requires, inter alia, "a determination that such testing was effectively not available at the time of trial." § 29-4120(5). However, reading Nebraska's DNA Testing Act as a whole, we do not read this reference to limit the scope of the relief granted under the DNA Testing Act to persons convicted after a trial. See *Weeks v. State*, 140 S.W.3d 39 (Mo. 2004) (stating that despite some references to "time of trial," Missouri DNA testing statute, when read as a whole, applied both to those convicted after plea and to those convicted after trial).

Nebraska's DNA Testing Act applies to "a person in custody pursuant to the judgment of a court," § 29-4120(1), and is more similar to the language of the Kansas statute at issue in *State v. Smith*, 34 Kan. App. 2d 368, 119 P.3d 679 (2005). The Kansas statute referred to "'a person in state custody, at any time after conviction.'" *Id.* at 370, 119 P.3d at 682. The Kansas court noted that the "statute itself fails to restrict its ambit based upon the plea entered by the defendant" and concluded that it would be inconsistent with the statute if DNA testing were denied solely because the conviction was the result of a guilty plea. *Id.* at 371, 119 P.3d at 683. The Kansas court stated, "The legislature is perfectly capable of limiting such postconviction relief to those who pled not guilty or no contest to the material charges, and no such limitation appears in the text of the statute." *Id.*

Nebraska's DNA Testing Act, read as a whole, does not limit its application to those who were convicted following a trial. The Legislature expressed a broad intent that "wrongfully convicted persons have an opportunity to establish their innocence through [DNA] testing," § 29-4117, and that the court shall order DNA testing upon a showing that the biological material may be "relevant to the claim that the person was wrongfully convicted or sentenced," § 29-4120(5). Based on such intent and the language of the DNA Testing Act, we conclude that the DNA Testing Act does not exclude persons who were convicted and sentenced pursuant to pleas. The district court in this case therefore erred in concluding that because of his plea, Winslow was not entitled to relief under the DNA Testing Act.

*DNA Testing May Produce Noncumulative,*
*Exculpatory Evidence.*

In the event it was incorrect in its conclusion that Winslow waived his right to DNA testing, the district court considered the merits of Winslow's motion. Winslow asserts on appeal that the court erred in its determination that testing would not produce noncumulative, exculpatory evidence. We agree with Winslow and conclude that the court erred in such determination.

We recently set forth the procedure for obtaining DNA testing pursuant to the DNA Testing Act as follows:

> A person in custody takes the first step toward obtaining possible relief under the DNA Testing Act by filing a motion requesting forensic DNA testing of biological material. See § 29-4120(1). Forensic DNA testing is available for any biological material that (1) is related to the investigation or prosecution that resulted in the judgment, (2) is in the actual or constructive possession of the State or others likely to safeguard the integrity of the biological material, and (3) either was not previously subjected to DNA testing or can be retested with more accurate current techniques. See *id.* After a motion seeking forensic DNA testing has been filed, the State is required to file an inventory of all evidence that was secured by the State or a political subdivision in connection with the case. See § 29-4120(4).
>
> If the threshold requirements of § 29-4120(1) have been met, then a court is required to order testing only upon a further determination that "such testing was effectively not available at the time of trial, that the biological material has been retained under circumstances likely to safeguard the integrity of its original physical composition, and that such testing may produce noncumulative, exculpatory evidence relevant to the claim that the person was wrongfully convicted or sentenced." § 29-4120(5).

*State v. Phelps*, 273 Neb. 36, 40, 727 N.W.2d 224, 227-28 (2007).

We note that as a factual basis in support of Winslow's plea, the State relied on the evidence and testimony of witnesses at the trial of Winslow's codefendant, White. Around the time

Winslow filed his motion for DNA testing, White also filed a motion for DNA testing. White's motion was also denied. The appeals of Winslow's and White's motions for DNA testing were consolidated for briefing and oral argument before this court.

In White's appeal, we concluded that the district court erred in its determination that DNA testing would not result in noncumulative, exculpatory evidence. We adopt the reasoning and conclusion in *State v. White, ante* p. 419, 740 N.W.2d 801 (2007), in the present case. We noted in *State v. White, supra*, that DNA testing could exclude both White and Winslow as contributors to the semen samples collected at the scene of the crime, and we determined that such DNA test result would be "exculpatory evidence" under the unique definition of "exculpatory" in Nebraska's DNA Testing Act. Section 29-4119 defines exculpatory evidence as follows: "For purposes of the DNA Testing Act, exculpatory evidence means evidence which is favorable to the person in custody and material to the issue of the guilt of the person in custody." In *State v. White*, we noted that if White and Winslow were excluded as contributing to the semen sample, such evidence would be favorable to White and material to the issue of White's guilt, because it would undermine the credibility of witnesses against White who testified that *only* White and Winslow had sexually assaulted Wilson. We therefore reversed the denial of White's motion for DNA testing and remanded the cause to the district court with directions.

We similarly conclude that the court in the present case erred in determining that DNA testing could not result in noncumulative, exculpatory evidence relevant to the claim that Winslow was wrongfully convicted or sentenced. As in *State v. White, supra*, DNA testing could exclude White and Winslow as contributors to the semen sample. Because the factual basis for Winslow's plea consisted of the evidence and testimony from White's trial, the potential test results that would be noncumulative, exculpatory evidence in White's case would also be noncumulative, exculpatory evidence in Winslow's case. Such evidence could raise doubts regarding the veracity of the testimony at White's trial that served as the factual basis for Winslow's plea and would therefore be favorable to Winslow and relevant to his claim of wrongful conviction. Evidence raising serious doubt

regarding such testimony could also be favorable to Winslow and relevant to a claim that he was wrongfully sentenced. That is, even if Winslow were placed at the scene of the crime, such evidence excluding Winslow as a contributor would also be relevant to a claim by Winslow that he was less culpable than the sentencing court had believed him to be and that therefore, he was wrongfully sentenced.

We conclude that the district court erred in concluding that DNA testing would not result in noncumulative, exculpatory evidence and that therefore, the district court abused its discretion when it denied Winslow's motion for DNA testing on such basis. Similar to the situation in *State v. White, supra*, the court assumed for purposes of analysis, but did not decide, that biological material had been retained under circumstances likely to safeguard the integrity of its original physical composition. We therefore remand the cause to the district court to make a finding on the retention issue and, if proper circumstances exist, to order DNA testing of such material.

## CONCLUSION

We conclude that under the DNA Testing Act, relief is available to defendants whether they were convicted following trial or convicted based on a plea. The district court therefore erred in concluding that because Winslow pled no contest, he waived his rights under the DNA Testing Act. The court also erred in determining that DNA testing would not produce noncumulative, exculpatory evidence. The court abused its discretion when it denied Winslow's motion for DNA testing. We reverse the denial and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.