NOT DESIGNATED FOR PUBLICATION

No. 125,527

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KIM P. VALENTINE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; FAITH MAUGHAN, judge. Submitted without oral argument. Opinion filed August 16, 2024. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Chelsea Anderson*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., ATCHESON and PICKERING, JJ.

PICKERING, J.: Kim P. Valentine appeals the district court's summary denial of his K.S.A. 60-1507 motion. On appeal, Valentine claims that an amended DNA analysis report issued after trial entitles him to a new trial. He also claims that his trial counsel, sentencing counsel, and appellate counsel were all ineffective. After reviewing the record, we find the district court did not err in summarily denying Valentine's K.S.A. 60-1507 motion. We affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

The facts of the case are fully set forth in Valentine's direct appeal, *State v. Valentine*, No. 119,164, 2019 WL 2306626, at *1-3 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1070 (2019). Relevant to this appeal, V.M.D. accused Valentine of hitting her on her face, head, and body and forcing her to engage in nonconsensual sexual intercourse. The State charged Valentine with aggravated criminal sodomy, domestic battery, aggravated battery, and rape. DNA swabs were taken from both parties and were examined by a forensic scientist, Sarah Geering, one of the State's witnesses at Valentine's trial. The jury found Valentine guilty of aggravated criminal sodomy and domestic battery but found Valentine not guilty of aggravated battery and was unable to reach a unanimous decision on the rape charge. The State later dismissed the rape charge without prejudice.

*DNA Analysis Report*

At trial, the State submitted Geering's DNA analysis report as evidence. The report detailed Geering's findings on the glans swab, shaft swab, and scrotal swab of Valentine's genital area. As for the glans swab, Geering concluded that Valentine and V.M.D. could not be excluded as contributors to the DNA profile. Geering estimated that the probability of selecting a random unrelated individual as the second contributor to the DNA profile was 1 in 202 trillion.

Regarding the shaft swab, Geering found that V.M.D. could not be excluded as the major DNA profile contributor and Valentine could not be excluded as the minor contributor. Geering estimated that the probability of selecting a random unrelated individual as the major contributor was 1 in 2.55 octillion. The report stated that Valentine and V.M.D. could not be excluded as contributors to the DNA profile from the

scrotal swab and estimated the probability of selecting a random unrelated individual as the second contributor was 1 in 61,000.

Following his convictions, Valentine filed a motion for new trial and judgment of acquittal on October 4, 2017. After Valentine filed the motion and before sentencing, Geering issued an amended DNA analysis report dated November 28, 2017. The amended report specifically addressed the DNA profile of the scrotal swab. Geering again stated that Valentine and V.M.D. could not be excluded as contributors. Geering later modified the estimated probability of selecting a random unrelated individual as being a contributor from 1 in 61,000—the estimate presented at trial—to 1 in 776. Geering's findings about the glans swab and shaft swab remained unchanged.

At the posttrial motions and sentencing hearing held January 18, 2018, Valentine was represented by new counsel, who raised the amended DNA analysis report as an issue:

> "One of those [issues] relates to late discovery . . . of a DNA calculation error by the Regional Forensic Science Center that changes the impertinent calculation of the DNA results by a significant factor. I suppose that's somewhat offset by the nature of the defense, but it is something that is important for the Court to have in mind."

Sentencing counsel did not ask the district court to apply the two-part test for a new trial claim based on newly discovered evidence. See *State v. Lyman*, 311 Kan. 1, 17, 455 P.3d 393 (2020). Sentencing counsel also argued that Valentine felt he should have testified and felt pressured not to do so. The district court denied the motion, stating that while there was a significant change to one DNA finding, the other two DNA samples were unchanged. The court proceeded to impose Valentine's sentence. Valentine's direct appeal was decided on May 31, 2019. *Valentine*, 2019 WL 2306626, at *1. Our Supreme Court denied Valentine's petition for review on December 17, 2019.

3

*K.S.A. 60-1507 Motion*

On September 2, 2020, Valentine filed a pro se K.S.A. 60-1507 motion, which is the subject of this appeal. He claimed that the DNA evidence was the "sole evidence" resulting in his convictions and that such evidence was wrong. Additionally, he alleged his trial, sentencing, and direct appeal appellate counsel were ineffective. He made several claims of ineffective assistance allegations against trial counsel, including failing to tell him that a jury instruction was wrong and failing to object to said jury instruction; agreeing to a redaction of police body cam evidence without explaining the decision to him; misleading him by advising him not to testify without discussing the benefits of testifying, which caused him not to testify even though he felt he "had a right to do so"; failing to contact or subpoena witnesses; ignoring him and "not acknowledging [him] as a person"; and continuing the case during the pretrial stage without permission and without informing him.

Valentine alleged sentencing counsel failed to raise the amended DNA analysis report as an issue for a new trial. As noted above, sentencing counsel did raise the DNA analysis issue during argument at the motion hearing but did not apply the two-part test for a newly discovered evidence claim.

Valentine also alleged that appellate counsel was ineffective for three reasons: (1) failing to raise "the fact that the D.N.A. [r]esults were not conclusive to the same ones that convicted me"; (2) failing to raise "the fact that if my trial lawyer . . . had clearly let me know that I would've disagreed with the redaction of the body cam footage"; and (3) failing to raise "the fact that the witness wrote a letter that clearly states I was no danger to her and that I was considered a good person to her."

In addition to his K.S.A. 60-1507 motion, Valentine filed a pro se supplemental brief and memorandum of law. Valentine alleged the State violated *Brady v. Maryland*,

373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by not disclosing the amended DNA analysis report before or during trial. He further argued the "fact that the jury was not able to review the letter suppressed to help in their d[e]liberation" was "plain error" requiring reversal of his convictions. He also asserted the amended DNA analysis report was newly discovered evidence that would have changed the trial's outcome. Additionally, Valentine asserted that trial counsel was ineffective for failing to request a mistrial after the amended DNA analysis report was turned over.

The State's response outlined how Valentine's attorneys were not ineffective. The State countered that, at trial, Valentine had stated without hesitation that he decided not to testify and had acknowledged on the record that he had the opportunity to discuss the pros and cons of testifying with trial counsel. The State also argued that because the amended DNA report was prepared after trial, it would have been impossible for trial counsel to move for a mistrial in light of the report. As for Valentine's newly discovered evidence claim, the State responded that because only one of the three DNA analyses was amended, the trial's outcome would not have changed. Finally, the State countered that because no *Brady* violation occurred regarding the DNA report, there was no DNA analysis issue for appellate counsel to raise on direct appeal.

On August 31, 2021, the district court summarily denied Valentine's K.S.A. 60-1507 motion. The court concluded that trial counsel was not ineffective. The court ruled that Valentine was not entitled to relief under the theory of newly discovered evidence because the DNA analysis findings did not change for two of three DNA samples and did not create a reason to set aside the jury verdicts. The court also found no *Brady* violation occurred and that appellate counsel was not ineffective. This appeal followed.

5

*The District Court Did Not Err in Summarily Denying Valentine's K.S.A. 60-1507 Motion*

On appeal, Valentine raises six issues, two of which he raises for the first time on appeal: (1) He is entitled to a new trial based on newly discovered evidence; (2) trial counsel was ineffective for denying his right to testify; (3) sentencing counsel was ineffective for failing to argue for a new trial based on the amended DNA analysis report; (4) appellate counsel was ineffective for failing to argue for a new trial based on the amended DNA analysis report; (5) sentencing counsel was ineffective for failing to require retesting of the other DNA samples presented at trial, raised for the first time on appeal; and (6) appellate counsel was ineffective for failing to bring an ineffective assistance claim against sentencing counsel on direct appeal, also raised for the first time on appeal.

*Standard of Review*

When, as here, the district court summarily denies a K.S.A. 60-1507 motion, the appellate court exercises unlimited review to determine whether the motion, files, and records conclusively show that the movant is not entitled to relief. *State v. Vasquez*, 315 Kan. 729, 731, 510 P.3d 704 (2022).

*Analysis*

To obtain relief, a K.S.A. 60-1507 movant must show by a preponderance of the evidence either (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the [movant] as to render the judgment vulnerable to collateral attack." K.S.A. 2023 Supp. 60-1507(b)

(grounds for relief); Supreme Court Rule 183(g) (2024 Kan. S. Ct. R. at 241) (preponderance burden).

When considering a K.S.A. 60-1507 motion, the district court has three options: (1) summarily deny the motion upon finding that the motion, files, and records conclusively show that the movant is not entitled to relief; (2) hold a preliminary hearing upon finding that the motion, files, and records show that a potentially substantial issue exists, after which the court may deny the motion upon finding that no substantial issue exists; or (3) hold a full evidentiary hearing upon finding that the motion, files, and records show that a substantial issue exists. *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020).

With respect to the moving party, he or she bears the burden to show entitlement to an evidentiary hearing. The movant must make contentions with an evidentiary basis, or the basis must be evident in the record. *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019). If the movant meets this burden, the district court must hold an evidentiary hearing unless it is a successive motion seeking similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

*We Address the First Four Issues*

1.    *Valentine's Claim for a New Trial Based on Newly Discovered Evidence*

Apart from his ineffective assistance claims, Valentine claims that at the hearing on his original motion for a new trial, the district court erred in denying his motion. He states that "Mr. Valentine continues to proffer that the Court should have granted him a new trial instead of moving to sentencing." He maintains that he can satisfy the two-part test for seeking a new trial based on newly discovered evidence. To obtain a new trial, Valentine must show: (1) The new evidence "could not have been produced at trial with

7

reasonable diligence"; and (2) the new evidence is so material "that it would be likely to produce a different result upon retrial." *Lyman*, 311 Kan. at 17. Under this two-part test, Valentine first submits that the amended DNA analysis report is material and favorable to him and that the report could not be produced at trial. Second, he asserts that there is a reasonable probability that the trial would have had a different outcome had the jury been presented with the amended report.

The State responds that this issue is a trial error that should not be raised in a K.S.A. 60-1507 motion. The State further contends that Valentine does not allege exceptional circumstances that justify raising this issue in a K.S.A. 60-1507 motion. We agree with the State.

A K.S.A. 60-1507 motion generally cannot be used to assert trial errors that should have been raised on direct appeal. Movants may raise trial errors affecting constitutional rights in a K.S.A. 60-1507 motion if the failure to raise the errors on direct appeal is excused by exceptional circumstances. *State v. Brown*, 318 Kan. 446, 448-49, 543 P.3d 1149 (2024); Supreme Court Rule 183(c)(3). Exceptional circumstances can include ineffective assistance of counsel. *Dawson v. State*, 310 Kan. 26, 36-37, 444 P.3d 974 (2019). However, Valentine does not assert exceptional circumstances in his K.S.A. 60-1507 motion that justify raising an alleged trial error. Therefore, we will not consider this issue.

2.  *Valentine's Claim of Ineffective Assistance of Trial Counsel for Denying His Right to Testify*

Valentine claims that trial counsel was ineffective for failing to adequately advise him about his right to testify. He argues that trial counsel advised him about his right but only advised him about the negative impacts of testifying. Valentine also contends that he felt coerced by trial counsel into waiving his right to testify. The State rebuts that

Valentine's claim is conclusory with no evidentiary basis. The State counters that, at trial, the district court engaged with Valentine regarding his decision on testifying. The State highlights that Valentine told the district court that he had discussed the pros and cons of testifying with trial counsel and that Valentine confirmed multiple times at trial that it was his desire not to testify.

*We follow* Strickland v. Washington *when assessing an ineffective assistance of counsel claim.*

An ineffective assistance of counsel claim is analyzed under the two-pronged test outlined in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the claimant must show that counsel's performance was deficient—that is, "counsel's representation fell below an objective standard of reasonableness." *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022). Judicial scrutiny must be highly deferential, with every effort made "to "'eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"" 315 Kan. at 218. The court must strongly presume "'that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, [counsel's actions] "might be considered sound trial strategy."'" *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

To show prejudice under the second prong, the claimant must show that there was a reasonable probability that counsel's performance "affected the outcome of the proceedings, based on the totality of the evidence. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" [Citation omitted.]" 313 Kan. at 486. However, if a defendant cannot show prejudice as a result of counsel's

9

alleged deficiencies, "a court need not determine whether counsel's performance was deficient." *Strickland*, 466 U.S. at 697.

In Kansas, "criminal defendants are in charge of three decisions—(1) what plea to enter; (2) whether to waive the right to a jury trial; and (3) whether to testify . . . ." *State v. Brown*, 305 Kan. 413, 425, 382 P.3d 852 (2016). Criminal defendants have a constitutional right to testify at trial. *State v. Anderson*, 294 Kan. 450, 465, 276 P.3d 200 (2012). The decision of whether to testify is made after full consultation with counsel. See *Flynn v. State*, 281 Kan. 1154, 1163, 136 P.3d 909 (2006).

In Valentine's K.S.A. 60-1507 motion, he alleged that trial counsel "[misled] me by [t]elling me not to testify and I was going home." Valentine also alleged that "[trial counsel] was ineffective by not advising me of the [benefit] of me testifying on my behalf. By stating it would not help my case." He further claimed that "I didn't get to testify[.] I feel I had a right to do so."

During trial, the district court inquired on the record with Valentine and his trial counsel regarding Valentine's choice of whether or not to testify. Before presenting the defense's case, trial counsel informed the district court that Valentine "has indicated that he is not going to testify." The district court then engaged Valentine.

> "THE COURT: Mr. Valentine, your attorney had indicated that you are choosing not to testify in this case; is that correct?
> "THE DEFENDANT: Yes, ma'am.
> "THE COURT: And you do understand that you have a right to testify in your own case?
> "THE DEFENDANT: Yes, ma'am.
> "THE COURT: Do you also understand that no one can force you to testify in your own case?
> "THE DEFENDANT: Yes, ma'am.

10

"THE COURT: So [the State] can't call you to testify, your attorneys can't make you testify, no one can force you to testify. Do you understand that?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Have you had the opportunity to discuss with your attorneys your right to testify?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Have you discussed the pros and cons of testifying?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: After hearing all that information and having that discussion with them, was it your decision not to testify in this trial?

"THE DEFENDANT: Yes, ma'am."

Other panels of this court have examined whether K.S.A. 60-1507 movants have provided sufficient evidentiary bases to support claims that their trial counsel prevented them from testifying. See *Novotny v. State*, No. 125,640, 2024 WL 742293, at *6 (Kan. App. 2024) (unpublished opinion) (finding trial counsel did not prevent movant from testifying at trial where record showed movant did not assert desire to testify until after conviction), *petition for rev. filed* March 25, 2024; *Taylor v. State*, No. 124,043, 2022 WL 3693055, at *4 (Kan. App. 2022) (unpublished opinion) (finding movant chose to follow trial counsel's advice not to testify, not that trial counsel prevented movant from testifying), *rev. denied* 317 Kan. 851 (2023); *Brown v. State*, No. 119,063, 2018 WL 6715411, at *5 (Kan. App. 2018) (unpublished opinion) (finding movant's claim "that he wanted to testify but trial counsel did not 'encourage[] or support' his wishes" was not supported by the record).

Likewise, Valentine did not allege facts in his motion or elsewhere that suggested trial counsel pressured him not to testify. The district court's exchange with Valentine during trial about testifying provides more clarity. Valentine acknowledged he had discussed testifying with trial counsel, including both the pros and cons of testifying, and he confirmed that it was his decision not to testify. Similar to *Novotny*, Valentine did not

11

assert a desire to testify until after his conviction. Valentine's K.S.A. 60-1507 motion only alleged that he had a desire to testify and was advised against it; he did not indicate what he would have said had he testified. Therefore, Valentine's claim on this issue is conclusory without an evidentiary basis. The district court did not err in summarily denying this claim.

3.    *Valentine's Claims His Sentencing Counsel Was Ineffective for Failing to Argue for a New Trial Based on the Amended DNA Analysis Report*

Valentine argues that his sentencing counsel should have argued that because one of the three DNA results was in error, the jury did not have the correct information and thus he was prejudiced. Valentine further argues that sentencing counsel was ineffective for failing "to strenuously argue" that the jury's verdict was unreliable because of the amended DNA report. In support, he points to the contradictory statements by V.M.D. and V.M.D.'s prior claim of abuse that officers had determined was self-inflicted. He argues that "this case was not readily decided by the jury and any evidence to Mr. Valentine's favor definitely could have changed the outcome of the trial."

The State's response is that Valentine cannot show prejudice. That is, Valentine's theory of defense to the aggravated sodomy charge was consent. So, the fact that V.M.D.'s saliva was present therefore was not significant. The State adds that two of the three DNA swabs "still indicated a high probability that V.M.D.'s saliva was on movant's genitalia."

Valentine presented a consent defense at trial. We can look to *Payne v. State*, No. 94,107, 2006 WL 1976545 (Kan. App. 2006) (unpublished opinion), where another panel of this court considered a claim of ineffective assistance regarding DNA evidence when the trial defense was consent. There, Payne was convicted of aggravated sodomy and rape. His trial counsel presented a consent defense at trial. In Payne's K.S.A. 60-1507

12

motion, he alleged that his trial counsel was ineffective for failing to object to DNA evidence at trial and for failing to investigate other defenses. The *Payne* panel rejected the claim, concluding that trial counsel challenging the DNA evidence would have been "incompatible" with the consent defense. 2006 WL 1976545, at *4. The panel added that the facts of the case "render it incredible that any other defense such as misidentification by the victim would have been believable in the eyes of the factfinder." 2006 WL 1976545, at *4; see also *State v. Smith*, 34 Kan. App. 2d 368, 373-74, 119 P.3d 679 (2005) (finding new DNA evidence would not reveal exculpatory evidence when defendant presented consent defense at trial).

We can therefore conclude, as these cases demonstrate, that it is not unreasonable for counsel either to fail to challenge DNA evidence at trial or to pursue a new trial on the basis of a DNA evidence dispute when the defense at trial is consent. Moreover, the above cases show that when the defense at trial is consent, the outcome of the trial is not likely to change based on a potential change in DNA evidence.

Here, the jury heard Valentine's statement to police that he engaged in intercourse with V.M.D. His defense counsel stipulated to the existence of forensic evidence, and he argued to the jury that such evidence did not determine that Valentine was guilty. The jury was therefore less concerned with what the DNA evidence showed and more concerned with whether there was consent. Thus, the record establishes that Valentine cannot show either that sentencing counsel's representation was deficient in failing to adequately argue the DNA issue or that Valentine was prejudiced by such failure. The district court did not err in summarily denying this claim.

4.      *Valentine's Claim of Ineffective Assistance of Appellate Counsel*

Valentine submits that his appellate counsel on direct appeal was ineffective for failing to raise the importance of the newly discovered DNA evidence as the primary

reason for a new trial. In response, the State contends that Valentine can show neither deficient performance nor prejudice. The State points to Valentine's consent defense and that appellate counsel "was clearly performing his duty of only raising issues which have merit." The analysis pertaining to sentencing counsel's failure to adequately argue the DNA issue is also instructive here.

As noted above, the *Payne* panel rejected a similar claim that counsel was ineffective for failing to challenge DNA evidence when the defense to a criminal sexual charge was consent. 2006 WL 1976545, at *4. Moreover, multiple panels of this court have denied requests for retesting of DNA samples because new DNA evidence would not be exculpatory in a consent defense to sexual criminal charges. See *Smith*, 34 Kan. App. 2d at 373-74; *State v. Knighton*, No. 120,806, 2019 WL 6333966, at *2 (Kan. App. 2019) (unpublished opinion); *State v. Cochran*, No. 119,635, 2019 WL 3759169, at *4 (Kan. App. 2019) (unpublished opinion).

Similar to sentencing counsel's alleged failure to adequately argue for a new trial based on the amended DNA analysis report, appellate counsel's attempt to raise the issue on direct appeal would have been equally unsuccessful. Thus, Valentine fails to show either deficient performance by appellate counsel in failing to raise this issue or that raising this issue would have changed the outcome of his appeal. The district court did not err in summarily denying this claim.

*We Will Not Address Valentine's Issues Raised for First Time on Appeal*

Together with the claims presented to the district court, Valentine raises two arguments for the first time on appeal. The first is that sentencing counsel should have requested new DNA testing on the other two samples presented at trial. The second is that, on direct appeal, appellate counsel should have claimed ineffective assistance of sentencing counsel.

14

Generally, issues not raised before the district court cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). There are exceptions to this general rule: "'[T]he newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case'"; consideration of the theory "'is necessary to serve the ends of justice or to prevent the denial of fundamental rights'"; and the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). If a newly raised issue falls within one of these three exceptions, appellate courts have discretion on whether to consider the issue. See 314 Kan. at 284.

An appellant is required to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019); Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). Valentine does not acknowledge that he raises any issues for the first time on appeal, nor does he claim that any exceptions apply excusing his assertions of new legal theories for the first time on appeal. We therefore do not address Valentine's last two arguments. See *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015) (declining to reach merits of issue raised first time on appeal because defendant failed to assert preservation exception as required under Rule 6.02[a][5]).

Affirmed.